**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GEORGE MOYA,

      Plaintiff-Appellant,

v.

KAY SCHOLLENBARGER, General
Manager, ROBERT TAFOYA,
Director of Operations, and RAUL
MONTOYA, Electrician, "Supervisor
of All Trades," New Mexico State
Fair, in their individual capacities,

      Defendants-Appellees.

No. 04-2319

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-04-172-RB/DJS)**

---

Dennis W. Montoya, Montoya Law, Inc., Rio Rancho, NM, for Plaintiff-
Appellant.

Daniel Joseph Macke, (Elizabeth L. German with him on the brief), Brown &
German, Albuquerque, NM, for Defendants-Appellees.

---

Before **MURPHY**, **EBEL**, and **McCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

The district court ordered dismissal of George Moya's civil rights claim "without prejudice." We conclude that the order was nonetheless a final decision such that our jurisdiction is proper. And although the district court mistakenly applied a heightened pleading standard in evaluating the propriety of dismissal, we affirm because we conclude that the dismissal would also be proper under the correct standard.

## I. BACKGROUND

### A. Complaint and Amended Complaint

On February 17, 2004, Mr. Moya filed the present civil rights claim pursuant to 42 U.S.C. § 1983 against three officials of the New Mexico State Fair ("Fair"), in their individual capacities.[1] The complaint alleged that in April 2003 Mr. Moya was "involuntarily separated" from his job as a plumber for the Fair due to an on-the-job injury. That injury, in turn, allegedly occurred "as a direct and proximate result of hostile work conditions" to which Defendants "deliberately and systematically exposed [Mr. Moya] . . . in retribution and retaliation for [Mr. Moya's] having spoken out on issues of public concern." The public issues on which Mr. Moya allegedly spoke out included: the Fair's illegal use of Mr. Moya's plumber's license to "cover" work done by unlicensed personnel; the illegal exploitation of Fair employees; violation of the Fair Labor

---

[1]The three Defendants listed in the complaint are: Kay Schollenbarger, General Manager; Robert Tafoya, Director of Operations; and Raul Montoya, Electrician and "Supervisor of All Trades."

Standards Act by Fair employees; violation of the Families and Medical Leave Act by the Fair; and supervision by unqualified personnel at the Fair. Mr. Moya's complaint sought both compensatory and punitive damages.

In response to the complaint, Defendants filed a motion for a more definite statement,[2] arguing that it was unclear (1) what Mr. Moya claimed as an adverse employment action, (2) how the timing of Mr. Moya's speech related to the timing of the alleged adverse action, and (3) what actions were taken by each of the three Defendants. The district court granted Defendants' motion on all three grounds and allowed Mr. Moya two weeks to file an amended complaint correcting the deficiencies.

Mr. Moya timely filed an amended complaint attempting to address the district court's concerns. First, the amended complaint explained that the adverse employment action taken against Mr. Moya was the creation of a hostile work environment.[3] As for the district court's timing concern, the amended complaint stated simply that "[t]he hostile work environment created by the Defendants for the Plaintiff followed in close temporal proximity his exercise of First

---

[2]"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).

[3]The amended complaint also claimed that Mr. Moya's physical injury and his job loss were each "an extension of and an integral part of" both the hostile work environment and the adverse employment action.

Amendment protected activity." Finally, the amended complaint included three long paragraphs — one for each Defendant — describing in very general terms each Defendant's challenged actions. These alleged actions consisted mainly of (1) ignoring reports and complaints made by Mr. Moya and (2) creating and facilitating the violations against which he allegedly spoke out.

**B. Dismissal**

In response to the amended complaint, Defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The motion asserted that Defendants could not be liable to Mr. Moya for the alleged conduct because they were protected by qualified immunity. After receiving briefing from both sides, the district court issued a Memorandum Opinion and Order "GRANT[ING] Defendants' Rule 12(b)(6) motion to dismiss WITHOUT PREJUDICE." Dist. Ct. Op. at 1. An initial portion of the court's analysis stated that

> where a qualified immunity defense is asserted in a Rule 12(b)(6) motion to dismiss, the Court applies a heightened pleading standard, requiring the complaint to contain "specific, non-conclusory allegations of fact that . . . if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law."

Id. at 4 (quoting Dill v. City of Edmond, 155 F.3d 1193, 1204 (10th Cir. 1998) (internal quotation omitted)). Applying that standard, the court noted that "Mr. Moya's allegations contain conclusory statements, with few specific facts to support them." Id. Specifically, the court noted that Mr. Moya (1) offered no

- 4 -

incidents to support his claim of a hostile work environment, (2) provided no dates or time frames as to when he spoke and when he was retaliated against, and (3) provided "no specific examples of corruption or details of how Defendants benefitted from ignoring his complaints." Id. Because Mr. Moya failed to allege specific facts, the district court concluded that his allegations were conclusory statements and that Defendants' motion to dismiss should be granted. Id. at 5.

The district court then stated that "[d]espite Mr. Moya's failure to allege any specific facts that would state a claim for violation of his First Amendment rights, an analysis of the qualified immunity issue follows." Id. As to the first prong of qualified immunity — whether Defendants violated a "clearly established statutory or constitutional right[]," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) — the court noted that "a plaintiff must do more than identify a clearly established right in the abstract and allege that the defendant violated that right." Dist. Ct. Op. at 6. Specifically,

> [a]lthough Mr. Moya has a clearly established constitutional right to free speech under the First Amendment, he can not [sic] simply allege that Defendants violated that right. He must also allege sufficient facts that, if true, would show that Defendants violated his First Amendment rights. Mr. Moya has failed to do so.

Id. at 6–7. The court recognized that "Mr. Moya's interest in speaking out about what occurs at the State Fair . . . *may* outweigh Defendants' interests in promoting an efficient work environment" but concluded that "he has not alleged

sufficient facts to show that the speech was a substantial factor in the adverse employment action, if any." Id. at 11 (emphasis in original). Specifically,

> [n]either of Mr. Moya's complaints . . . indicate to the Court what the hostile work environment was, nor what Mr. Moya's injuries were, nor how, if at all, they were related to each other and to Mr. Moya's separation from his State Fair job. In other words, Mr. Moya has not alleged sufficient facts that show any adverse employment action taken against him by Defendants. He has also failed to show that his complaining to his supervisors was a substantial factor in any adverse employment action.

Dist. Ct. Op. at 11.

The final paragraph of the district court's decision concluded: "IT IS HEREBY ORDERED: Defendants' Rule 12(b)(6) motion to dismiss Mr. Moya's suit for failure to state a claim is Granted. The case will be dismissed Without Prejudice, each side to bear their own costs and fees." Id. at 12.

## C. Appeal and Motion to Dismiss the Appeal

Mr. Moya filed a notice of appeal from the district court's Memorandum Opinion and Order. Defendants responded with a motion to dismiss the appeal for lack of appellate jurisdiction, claiming that "since Plaintiff's Complaint was dismissed without prejudice, this Court lacks appellate jurisdiction" and that "Plaintiff may still pursue a second amended complaint, raising the same claim, provided sufficient facts are alleged." In his reply to Defendants' motion, Mr. Moya asserted that this court's jurisdiction is proper because his injury and some of the conduct of which he complained occurred so long ago that he would be

barred by the statute of limitations if he were forced to "'start over' with his complaint." We deferred decision on Defendants' motion to dismiss the appeal until after argument on the merits.

## II. DISCUSSION

### A. Appellate Jurisdiction

The courts of appeals are granted jurisdiction by statute over "appeals from . . . final decisions of the district courts of the United States." 28 U.S.C. § 1291. The initial question we face in this case is whether the dismissal of Mr. Moya's claims without prejudice was a "final decision"; if not, then we lack jurisdiction to hear the appeal. See Rekstad v. First Bank Sys., Inc., 238 F.3d 1259, 1261 (10th Cir. 2001) ("Aside from a few well-settled exceptions, federal appellate courts have jurisdiction solely over appeals from 'final decisions . . . .'") (emphasis omitted) (quoting 28 U.S.C. § 1291). We conclude that the district court in this case intended to dismiss Mr. Moya's entire cause of action; thus, that decision was final and our appellate jurisdiction is proper.

#### 1. Legal framework

##### a. Practical approach to § 1291 finality

Although Defendants assert that we lack jurisdiction over this appeal because the district court's dismissal was without prejudice, that a dismissal was without prejudice does not necessarily make it non-final under section 1291. See United States v. Wallace & Tiernan Co., 336 U.S. 793, 794 (1949) ("That the

- 7 -

dismissal was without prejudice to filing another suit does not make the cause unappealable . . . ."); Coffey v. Whirlpool Corp., 591 F.2d 618, 620 (10th Cir. 1979) ("A case dismissed without prejudice may or may not be a final appealable order, depending upon the circumstances."). Rather, in this circuit, "whether an order of dismissal is appealable" generally depends on "whether the district court dismissed the *complaint* or the *action*. A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final." Mobley v. McCormick, 40 F.3d 337, 339 (10th Cir. 1994) (citations omitted, emphasis added); see also Sherr v. Sierra Trading Corp., 492 F.2d 971, 978 (10th Cir. 1974) ("It is well settled that an order dismissing the action, as distinguished from dismissal of the complaint, is a final judgment.").

Despite our use of this complaint/action terminology, we have long recognized that "the requirement of finality imposed by section 1291 is to be given a 'practical rather than a technical construction.'" Sherman v. Am. Fed'n of Musicians, 588 F.2d 1313, 1315 (10th Cir. 1978) (quoting Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546 (1949)). In evaluating finality, therefore, we look to the *substance* and *objective intent* of the district court's order, not just its terminology. See Mobley, 40 F.3d at 339 (stating that in evaluating whether a dismissal is a final decision, "the focus must necessarily be on the district court's intent in issuing its order") (quotation omitted); Mfrs. Cas. Ins. Co. v. Arapahoe

Drilling Co., 267 F.2d 5, 7 (10th Cir. 1959) ("[A] final decision within the significance of 28 U.S.C. § 1291 depends not on its name, its propriety or its normal function but rather upon the determination or refusal to determine a justiciable issue . . . .").

Thus, an order is not necessarily devoid of finality simply because it speaks in terms of dismissal of a complaint. Rather, we "endeavor to scrutinize [complaint dismissals] . . . closely in order to pinpoint those situations wherein, in a practical sense, the district court by its order has dismissed a plaintiff's action as well." Petty v. Manpower, Inc., 591 F.2d 615, 617 (10th Cir. 1979) (per curiam)); see also Thompson v. Dereta, 709 F.2d 1343, 1344 (10th Cir. 1983) ("It is well settled that dismissal of a complaint is not an appealable order unless, in a practical sense, the district court dismisses the action as well.") (citation omitted); Bragg v. Reed, 592 F.2d 1136, 1137 (10th Cir. 1979) ("This Court . . . reviews a dismissal to see if it effectively extinguished the plaintiff's cause of action."). Thus, for example, in a prior appeal from a district court order dismissing a complaint for lack of prosecution, "a matter going to the merits of appellant's complaint itself rather than a procedural problem which amendment of a complaint might rectify,"[4] we considered the order to be final and appealable. Petty, 591 F.2d at 617. Similarly, in a case where a district court dismissed a

_____

[4]See Fed. R. Civ. P. 41(b) (a dismissal for lack of prosecution "operates as an adjudication upon the merits" unless the court specifies otherwise).

complaint because the plaintiff's claims were barred by the Eleventh Amendment, we concluded that the dismissal was final and appealable because "a determination that the Eleventh Amendment was applicable sounded the 'death knell' of the litigation in federal court." Korgich v. Regents of N.M. Sch. of Mines, 582 F.2d 549, 550 (10th Cir. 1978). We have also found finality in cases where complaints were dismissed based on: federal preemption, Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1064 (10th Cir. 1994); Burford[5] abstention, Robert-Gay Energy Enters., Inc. v. State Corp. Comm'n of Kan., 753 F.2d 857, 859 & n.1 (10th Cir. 1985); Arrow v. Dow, 636 F.2d 287, 289 (10th Cir. 1980); lack of personal jurisdiction, Sherman, 588 F.2d at 1314–15; lack of subject matter jurisdiction, Jicarilla Apache Tribe v. United States, 601 F.2d 1116, 1124 (10th Cir. 1979); lack of a cognizable property interest for purposes of the Due Process clause, Chavez v. City of Santa Fe Hous. Auth., 606 F.2d 282, 283 (10th Cir. 1979); failure to timely exhaust administrative remedies, Bragg, 592 F.2d at 1138; and unripeness, Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 719–20 (10th Cir. 1989), abrogated on other grounds by Fed. Lands Legal Consortium *ex rel.* Robart Estate v. United States, 195 F.3d 1190 (10th Cir. 1999). In each case, the district court effectively "determined that the action could not be saved by an amendment of the complaint which the plaintiff could reasonably be expected to make."

---

[5]Burford v. Sun Oil Co., 319 U.S. 315 (1943).

Sherman, 588 F.2d at 1315.  Thus, the dismissals — though nominally just of complaints — practically disposed of entire actions and thus were final decisions.

Our "practical" approach to finality also allows us to deal with the unfortunate reality that sometimes courts are less than clear as to whether they intend to dismiss just the complaint or the entire action.[6]  See 15A Charles Alan Wright et al., Federal Practice & Procedure § 3914.1 ("[T]his distinction [between dismissal of a complaint and dismissal of an entire action] is not always observed by the trial bench and bar . . . ."); see also id. § 3914.6 ("Inevitably some dismissal orders are ambiguous in ways that undermine any clear determination of finality.").  In cases where the district court order is ambiguous, our approach is to determine as best we can whether the district court's order evidences an "inten[t] to extinguish the plaintiff's cause of action," Landmark Land Co., 874 F.2d at 720 (alteration, quotation omitted), and "whether [the] plaintiff has been effectively excluded from federal court under the present circumstances," Facteau v. Sullivan, 843 F.2d 1318, 1319 (10th Cir. 1988) (per curiam).  If so, then our appellate jurisdiction is proper.

---

[6]As we have observed, it is "possible that by inadvertence a district court order could refer to dismissal of the action, when in reality the court meant to dismiss the complaint." Fed. Sav. & Loan Ins. Corp. v. Huff, 851 F.2d 316, 320 (10th Cir. 1988) (en banc).  The reverse is also true.

## b. Summary of § 1291 finality principles

Based on our precedent, and although "it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality," Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964), we can lay out the following principles to be used in reviewing dismissal orders for finality. First, if a district court order expressly and unambiguously dismisses a plaintiff's entire action, that order is final and appealable.[7] See Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1275 (10th Cir. 2001) ("The district court dismissed the entire action, effectively excluding Amazon's suit from federal court. Therefore, the dismissal . . . was final and appealable . . . ."). Second, where a district court dismissal expressly *denies* the plaintiff leave to amend, or the district court's grounds for dismissal are such that the defect cannot be cured through an amendment to the complaint, that dismissal (even if it is ambiguous or nominally of the complaint) is for practical purposes of the entire action and therefore final. See Landmark Land Co., 874 F.2d at 720 ("[A] dismissal of a complaint based upon a defect that cannot be cured by amendment is an appealable order."); Sherman, 588 F.2d at 1315 (finding the dismissal final because it was "clear that the trial court determined that the action could not be

---

[7]We reemphasize that bare terminology in a district court order is not determinative. See Huff, 851 F.2d at 320 ("It is . . . possible that by inadvertence a district court order could refer to dismissal of the action, when in reality the court meant to dismiss the complaint.").

saved by an amendment of the complaint which the plaintiff could reasonably be expected to make"); Facteau, 843 F.2d at 1319 ("The critical determination is whether plaintiff has been effectively excluded from federal court under the present circumstances.").[8]  Third, when the dismissal order expressly *grants* the plaintiff leave to amend, that conclusively shows that the district court intended only to dismiss the complaint; the dismissal is thus not a final decision.  See Trotter v. Regents of Univ. of N.M., 219 F.3d 1179, 1182–83 (10th Cir. 2000) ("The order granted Trotter express leave to file a motion to amend her complaint within ten days from entry of the order.  This order clearly shows that the district court did not consider its . . . order to be a final order disposing of the entire action."); Hunt v. Hopkins, 266 F.3d 934, 936 (8th Cir. 2001) ("[W]hen a district court grants a plaintiff leave to amend his pleading, the court signals that the action has not been fully and finally adjudicated on the merits . . . ."); Thompson, 709 F.2d at 1344; see also Landmark Land Co., 874 F.2d at 720 ("[D]ismissal of a

---

[8]Similarly, a dismissal "with prejudice" is final and appealable because it means either that the entire action is dismissed or that the complaint is dismissed without leave to amend.  See Ciralsky v. C.I.A., 355 F.3d 661, 666 (D.C. Cir. 2004) ("The dismissal with prejudice of either a complaint or an action is final and appealable."); Heffernan v. Hunter, 189 F.3d 405, 408 (3d Cir. 1999) ("A dismissal with prejudice under Rule 12(b)(6) produces a final order appealable under 28 U.S.C. § 1291 . . . .").  In contrast, a dismissal "without prejudice" may or may not be final, depending on "[i]f it is intended to dispose of the cause of action." Coffey, 591 F.2d at 620.

complaint with leave to amend is not an appealable order . . . .").[9]  Finally, in all

other cases, we look to the language of the district court's order, the legal basis of

the district court's decision, and the circumstances attending dismissal to

determine "the district court's intent in issuing its order — dismissal of the

complaint alone or actual dismissal of plaintiff's entire action."  Petty, 591 F.2d

at 617.  If the effect of the district court order is that the plaintiff is "effectively

excluded from federal court," Facteau, 843 F.2d at 1319, then the district court

must have intended to dismiss the entire action and our appellate jurisdiction is

proper.

### 2.  Analysis

#### a.  Mr. Moya's argument

Before applying the above finality principles to determine whether this case

involves a final decision, we first dispose of the finality argument advanced by

---

[9]Over sixty years ago, we explained the process a plaintiff should follow
when he or she would rather appeal a non-final dismissal than amend the
complaint:

> Where a demurrer or motion to dismiss the complaint is sustained and
> the complaint dismissed in whole or in part, and plaintiff does not
> desire to amend, he should announce his election to stand on his
> pleading, let a final order or judgment be entered dismissing the action,
> and then appeal from that order or judgment.

Crutcher v. Joyce, 134 F.2d 809, 814 (10th Cir. 1943).  Thus, where a district
court dismisses but grants leave to amend, the plaintiff may notify the district
court of his or her decision to stand on the original complaint and, once a final
order or judgment is entered, appeal the grounds for dismissal.

Mr. Moya. He argues that the district court's dismissal order should be considered final because if he were forced to "start over" with a new complaint the applicable statute of limitations would now bar recovery for some of the conduct by Defendants of which he complains. In support of his position, Mr. Moya cites our statement in Bragg v. Reed that "[i]f it is clear that the plaintiff may not start over again with a properly drawn complaint, *because of limitations problems* or otherwise, the action is treated as final and the order is appealable." 592 F.2d at 1138 (emphasis added).

Mr. Moya's position misunderstands the Bragg holding and is without merit. Our reference in Bragg to "limitations problems" was not a reference to statutes of limitations that eventually may bar recovery in federal court subsequent to the initial dismissal of the complaint by the district court, but to the *administrative* limitations periods at issue in that case that had already run. The district court in Bragg had dismissed the plaintiff's complaint, which alleged racial discrimination, because she had failed to file a discrimination claim with the Equal Employment Opportunity Commission within the 30-day period specified in 5 C.F.R. § 713.214(a)(1)(i).[10] See 592 F.2d at 1138. Even though the dismissal was nominally of the plaintiff's complaint and not her entire action, we concluded that it was a final decision because the reason for dismissal meant

_____

[10]That regulation has since been replaced with a regulation providing a 45-day limitation period. See 29 C.F.R. § 1614.105.

- 15 -

amendment was futile; that is, it was "clear that the plaintiff [could] not start over again with a properly drawn complaint, because of [the administrative] limitations [period given in 5 C.F.R. § 713.214]." Id.; see also id. ("The [district court's] ruling was that the period of limitations with respect to filing an administrative complaint barred the lawsuit. Plaintiff cannot cure that defect except to persuade this court that the agency and trial court's interpretation of the law was erroneous."). Therefore, Bragg did not, as Mr. Moya claims, hold that the subsequent expiration of a limitations period makes an otherwise non-final district court order final. Rather, Bragg merely reiterated the rule that the dismissal of a complaint is a final decision where it in effect dismisses the entire action.

Moreover, the finality rule argued for by Mr. Moya is generally unnecessary because a plaintiff in Mr. Moya's situation is in little danger of being barred by the statute of limitation when he or she erroneously attempts to appeal the non-final dismissal of his or her complaint. If the dismissal is not a "final decision," that necessarily implies that the plaintiff may seek to amend the complaint — otherwise the dismissal would have been final.[11] See also Mobley, 40 F.3d at 399 (stating that when only a complaint is dismissed, "amendment [is] generally . . . available"); Fed. R. Civ. P. 15(a) ("[L]eave [to amend] shall be

---

[11]Or, as we contemplated in Crutcher, the plaintiff may instead choose to "announce his election to stand on his pleading, let a final order or judgment be entered dismissing the action, and then appeal from that order or judgment." 134 F.2d at 814.

freely given when justice so requires."). That amendment (assuming it was limited to the "conduct, transaction, or occurrence" at issue in the original complaint) would then relate back to the date that the original complaint was filed. See Fed. R. Civ. P. 15(c) ("An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."). Thus, no claim that was timely when made in the original complaint would be barred when made in a properly authorized amended complaint. We therefore reject Mr. Moya's proposed basis for finding the district court's dismissal to be a final decision.

### b. Analysis of the district court order

Turning now to our own finality analysis, we conclude that the district court's decision is ambiguous as to whether dismissal was just of Mr. Moya's complaint or of his entire action. First, the terms used by the district court are ambiguous. The first paragraph of the district court's opinion describes Defendants' motion as a motion "to dismiss *the complaint* against them,"[12] then states that the court "GRANTS Defendants' . . . motion." Dist. Ct. Op. at 1 (emphasis added). That would seem to indicate that dismissal was of the complaint only. However, the final paragraph of the opinion concludes that "[t]he

_____

[12]Although Defendants' motion to dismiss does not state whether it seeks dismissal of the entire action or just the complaint, the district court apparently construed it as seeking dismissal of the complaint.

*case* will be dismissed Without Prejudice" and states that "Defendants' . . . motion to dismiss Mr. Moya's *suit* for failure to state a claim is Granted." Id. at 12 (emphases added). Use of the terms "case" and "suit" would seem to indicate that the district court intended to dismiss Mr. Moya's entire action, not merely the complaint. See Black's Law Dictionary (8th ed. 2004) (defining "case" as "[a] civil or criminal proceeding, *action*, *suit*, or controversy at law or in equity" (emphases added)); see also Amazon, Inc., 273 F.3d at 1275 ("[W]here the dismissal finally disposes of the *case* . . . , the dismissal is final and appealable.") (emphasis added); Jicarilla Apache Tribe, 601 F.2d at 1124 ("[T]he practical effect of the District Court's dismissal order is the termination of the entire *case* in Federal District Court.") (emphasis added).

The substance of the district court's opinion is similarly ambiguous. It initially appears only to find Plaintiff's *complaint* deficient, as a matter of pleading: "Mr. Moya *failed to allege specific facts* that show a violation of his free speech rights in either the complaint or the first amended complaint. The Court, therefore, views Mr. Moya's allegations as conclusory statements and grants Defendants' motion to dismiss." Dist. Ct. Op. at 5 (emphasis added).[13] That would seem to indicate that the district court thought that an amendment

_____

[13]See also Dist. Ct. Op. at 4 ("Mr. Moya's allegations contain conclusory statements, with few specific facts to support them."); id. ("Mr. Moya offers no incidents to support this claim."); id. ("The Court . . . is not provided with any dates or time frame . . . .").

- 18 -

alleging additional facts could cure the defects[14] and that dismissal was therefore just of the complaint. However, the district court also proceeded to analyze Defendants' claim of qualified immunity. In conducting that analysis, the district court concluded that "no [adverse employment] actions occurred," that "Defendants' failure to respond to Mr. Moya's complaints did not violate any established free speech rights," and that "Mr. Moya did not allege any facts that would constitute a First Amendment claim." Id. at 7. These more substantive conclusions tend to show that the district court considered Defendants to be entitled to qualified immunity and therefore intended to dismiss Mr. Moya's entire action, not just his complaint.

Although there is no easy resolution to the question of finality in the face of this ambiguity, we ultimately conclude that the district court's order evinces an intent to dismiss Mr. Moya's entire action, not just his complaint. "Ambiguities at times are resolved in favor of finality, but at some point there is a sufficiently clear invitation to resurrect the action that finality is denied." Wright et al., supra, § 3914.6. We conclude that in this case, there is not a "sufficiently clear invitation" for Mr. Moya to amend the complaint or otherwise continue the proceedings in the district court. First, we consider the dispositive language in the final paragraph of the district court's opinion most clearly to express the

_____

[14]However, the district court neither granted nor denied leave to amend, and Mr. Moya never sought to amend a second time.

- 19 -

district court's intent; there, the court states that the "case" is dismissed. Second, that paragraph states that each side is "to bear their own costs and fees," which indicates that in the district court's view the case was finished. Third, when the district court granted Defendants' motion for a more definite statement, it specifically ordered that "Plaintiff shall file an amended complaint that corrects the deficiencies identified by this Memorandum Opinion and Order by June 11, 2004." That the dismissal order contains no analogous statement or any other reference to amendment, which at this stage would have required "leave of court or . . . written consent of the adverse party," Fed. R. Civ. P. 15(a), is at least some indication that the court did not intend to allow for amendment. Finally, the "overall tenor of the district court's order," Airparts Co., Inc., 28 F.3d at 1064, given the court's analysis of Defendants' claim of qualified immunity, evidences an intent to dismiss the entire action. Therefore, although it is a close question, we construe the district court's order as a dismissal of the "entire action" and exercise appellate jurisdiction accordingly.

### B. Merits of the appeal

We now address the merits of Mr. Moya's appeal. We conclude that although the district court mistakenly applied a heightened pleading standard, the decision to dismiss the action without prejudice should be affirmed.

### 1. Standard of review

Because whether a complaint fails to state a claim upon which relief may be granted is a question of law, we review *de novo* the district court's grant of a motion to dismiss under 12(b)(6). Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

The district court asserted that

> where a qualified immunity defense is asserted in a Rule 12(b)(6) motion to dismiss, the Court applies "a heightened pleading standard, requiring the complaint to contain specific, non-conclusory allegations of fact that . . . if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law."

Dist. Ct. Op. at 4 (quoting Dill, 155 F.3d at 1204) (additional quotations omitted). Although for a time we did apply such a heightened standard in qualified immunity cases, in 2001 we concluded that intervening Supreme Court precedent required us to abandon that approach. See Currier v. Doran, 242 F.3d 905, 916-17 (10th Cir. 2001) ("We conclude that this court's heightened pleading requirement cannot survive Crawford-El [v. Britton, 523 U.S. 574 (1998)]. . . . Therefore, this court will review Defendants' motions under the customary motion to dismiss standard . . . ."). As Defendants concede, the district court therefore erred in holding Mr. Moya's complaint to a heightened standard.

Instead, the proper standard for evaluating dismissal in a qualified immunity case is the normal standard we apply to dismissals generally. That is, in reviewing the dismissal, "[w]e accept as true all well-pleaded facts, as

distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." Maher v. Durango Metals, Inc., 144 F.3d 1302, 1304 (10th Cir. 1998). We affirm a district court's dismissal if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton, 173 F.3d at 1236 (internal quotations omitted).

### 2. Analysis

We turn now to an evaluation of Mr. Moya's allegations under this proper review standard. As discussed in more detail below, we conclude that his amended complaint did not sufficiently allege violation of a constitutional right and that dismissal was therefore appropriate.

### a. The two prongs of qualified immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Trotter, 219 F.3d at 1184 (quotations omitted). A proper qualified immunity analysis involves two steps: "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and, if so, proceed to determine whether that right was clearly established at the

time of the alleged violation.'"  Id. (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).

### b. Deprivation of constitutional right

### 1. First Amendment rights

As to the first prong of a qualified immunity analysis, Mr. Moya's allegations clearly implicate First Amendment rights.  The Supreme Court has held that the First Amendment prohibits a state government from "condition[ing] public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."  Connick v. Myers, 461 U.S. 138, 142 (1983).  Therefore, as we have noted, "a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech."  Dill, 155 F.3d at 1201.  Mr. Moya's amended complaint asserts that Defendants exposed him to a hostile work environment that led to his injury and termination "in retribution and retaliation for Plaintiff's having spoken out on issues of public concern."  He has thus broadly invoked valid First Amendment rights; we must therefore evaluate whether he has properly pled a violation of those rights.

In Dill, we noted that our review of this type of First Amendment claim involves "the four-step analysis derived from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick[, 461 U.S. at 138]."  Id.

First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Speech is protected if the employee's interest outweighs the interest of the employer. If this balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Finally, if Plaintiff makes such a showing, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Id. at 1201–02 (quotations, citations omitted). Whereas "[t]he first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected," "[t]he second two steps concern causation and involve questions of fact." Id. at 1202. We have also noted that "[i]mplicit in the Pickering test is a requirement that the public employer have taken some adverse employment action against the employee." Belcher v. City of McAlester, Okla., 324 F.3d 1203, 1207 n.4 (10th Cir. 2003); see also Baca v. Sklar, 398 F.3d 1210, 1220 (10th Cir. 2005) ("An employee alleging retaliation must show that his employer took some adverse employment action against him."). If Mr. Moya has failed to properly allege one or more of these prongs, then his action was properly dismissed.

## 2. Application of the Pickering analysis

Defendants admit for purposes of their appeal that Mr. Moya has sufficiently alleged that he engaged in protected speech — thus, they concede that

the first two prongs of the <u>Pickering</u> analysis are met.  Defendants contend, however, that Mr. Moya failed to sufficiently allege facts to meet the implicit requirement that there be an adverse employment action taken against Mr. Moya. We agree.

Mr. Moya's allegations as to his termination are as follows:

1. "[T]he New Mexico State Fair 'involuntarily separated' Plaintiff from his employment as a Plumber";

2. "Plaintiff's involuntary separation from his job was directly the result of his having sustained an on-the-job injury";

3. "Plaintiff was injured on the job as a direct and proximate result of hostile work conditions imposed upon him by the Defendants"; and

4. "The Defendants deliberately and systematically exposed Plaintiff to a hostile work environment in retribution and retaliation for Plaintiff's having spoken out on issues of public concern . . . ."

Mr. Moya further alleges that each Defendant (1) created or facilitated the purported violations against which he spoke out and (2) ignored Mr. Moya's complaints and reports about the alleged violations and illegal activity.  We conclude that these allegations are insufficient to establish, even at this preliminary stage of the litigation, that Defendants took an adverse employment action against Mr. Moya.

First, Mr. Moya's allegations that Defendants were involved with the violations against which he spoke out and that they ignored Mr. Moya's

- 25 -

complaints about those violations does not establish that Defendants took an adverse employment action against Mr. Moya.[15] Rather, the allegations show only that Mr. Moya was unable to get the response to his complaints that he desired from his employer. Although "employer action short of discharge may violate an employee's First Amendment rights," Dill, 155 F.3d at 1204, we conclude that failing to respond to an employee's complaints to that employee's satisfaction does not. Cf. Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ., 232 F.3d 1334, 1340 (10th Cir. 2000) (neither the employer's issuance of a "Corrective Action Plan" requiring the plaintiff to "[s]trive to create an atmosphere that will nurture collaboration with all colleagues" and to "conduct affairs with a conscious concern for the highest standards of professional commitment," nor requiring the plaintiff to attend weekly meetings with her supervisor constituted an adverse employment action).

Second, Mr. Moya's general assertions that he was "exposed" to a "hostile work environment" and that Defendants "imposed" "hostile work conditions" on him are merely conclusory allegations, see Maher, 144 F.3d at 1304, and are therefore insufficient by themselves to state a First Amendment retaliation claim. See Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001) ("[P]laintiffs must allege

---

[15]Mr. Moya does not allege that he was somehow injured by the alleged violations of which he complained, *e.g.*, that he was denied leave under the Family and Medical Leave Act or that he complained of safety violations and was injured because they were not remedied.

*sufficient facts* to support their § 1983 claims. Bare conclusions, even read in the light most favorable to plaintiff, may prove insufficient.") (emphasis added); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1270 (10th Cir. 1989) ("[C]onclusory allegations . . . are insufficient to state a claim under the First Amendment."); Ford v. West, 222 F.3d 767, 773 (10th Cir. 2000) (same); see also Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."); cf. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 n.6 (11th Cir. 1998) (concluding that statements that a place of employment "'was a racially hostile environment' . . . were properly struck [from affidavits] as conclusory"); Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (concluding that affidavits "replete with conclusory allegations of . . . [a] hostile working environment" were properly rejected). The broad claim of a "hostile work environment" therefore does not by itself constitute an allegation that Defendants took an adverse employment action against Mr. Moya.

Furthermore, Mr. Moya's amended complaint is completely devoid of any supporting factual allegations as to what made his work environment or work

conditions hostile.[16]  We are left entirely in the dark as to what about Mr. Moya's

work environment was objectionable.  More importantly, Mr. Moya's conclusory

and unsupported allegations fail to "give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355

U.S. 41, 47 (1957).  Because Mr. Moya has failed to allege facts showing that

Defendants took an adverse employment action against him, he has failed to

satisfy the Pickering test.  Therefore, his allegations are insufficient to survive

Defendants' motion to dismiss.

Since he has thus failed to satisfy the first prong of a qualified immunity

analysis, we need not address the second prong.  See Butler v. City of Prairie

Village, Kan., 172 F.3d 736, 747 n.4 (10th Cir. 1999).

## III. CONCLUSION

For the foregoing reasons, we DENY Defendants' motion to dismiss for

lack of appellate jurisdiction and AFFIRM the dismissal of Mr. Moya's action

without prejudice.

[16]Although in his brief *on appeal* Mr. Moya also refers to being "placed in dangerous situations," we need not consider that as an allegation because it is absent from the amended complaint.  See Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established . . . that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").  And, although the amended complaint refers to Mr. Moya's physical injury and his job loss, the complaint clearly states that those injuries are *derivative* of the alleged hostile work environment and not based on Defendants' actions; those injuries therefore cannot independently constitute the requisite adverse employment action.