FILED
United States Court of Appeals
Tenth Circuit

December 4, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

KATHERINE HAN-NOGGLE, as
daughter and next of kin to Mary Y.C.
Han, deceased; ELIZABETH
WALLBRO, as Personal Representative
of the Estate of Mary Y.C. Han,

     Plaintiffs - Appellants,

v.

CITY OF ALBUQUERQUE; ROBERT
PERRY, in his individual capacity and
official capacity as the City Attorney;
CHIEF RAYMOND D. SCHULTZ, in his
individual and official capacity as the
Chief of Police of the Albuquerque Police
Department for municipal and supervisory
claims; DEPUTY CHIEF PAUL FEIST;
DEPUTY CHIEF ELIZABETH PAIZ;
DEPUTY CHIEF ALLEN BANKS, in
their individual and official capacities as
supervisors and trainers within the
Albuquerque Police Department; MARC
ADAMS, in his individual and official
capacity as manager, investigator, and
trainer of the Albuquerque Police
Department Crime Lab; FIELD
INVESTIGATOR MICHAEL MUNIZ, in
his individual
and official capacity; OFFICER TRICIA
K. HOFFMAN, in her individual and
offical capacity; TODD J. WILHAM,
Albuquerque Police Department Public
Information Officer in his individual and
official capacity; JOHN DOES 1–2,

     Defendants - Appellees.

No. 14-2156

(D.C. No. 1:13-CV-00894-CG-GBW)
(D. N.M.)

KATHERINE HAN-NOGGLE, as daughter and next of kin to Mary Y.C. Han, deceased; ELIZABETH WALLBRO, as Personal Representative of the Estate of Mary Y.C. Han,

      Plaintiffs-Appellees/Cross-Appellants,

v.

CITY OF ALBUQUERQUE; DARREN WHITE, in his individual and official capacity as Public Safety Director for the City of Albuquerque; ROBERT PERRY, in his individual capacity and official capacity as the City Attorney; CHIEF RAYMOND D. SCHULTZ, in his individual and official capacity as the Chief of Police of the Albuquerque Police Department for municipal and supervisory claims; DEPUTY CHIEF PAUL FEIST; DEPUTY CHIEF ELIZABETH PAIZ; DEPUTY CHIEF ALLEN BANKS, in their individual and official capacities as supervisors and trainers within the Albuquerque Police Department; MARC ADAMS, in his individual and official capacity as manager, investigator, and trainer of the Albuquerque Police Department Crime Lab; FIELD INVESTIGATOR MICHAEL MUNIZ, in his individual and official capacity; OFFICER TRICIA K. HOFFMAN, in her individual and official capacity; TODD J. WILHAM, Albuquerque Police Department Public Information Officer, in his individual and official capacity; JOHN DOES 1-2,

      Defendants-Appellants/Cross-

Nos. 15-2051 and 15-2052

(D.C. No. 1:13-CV-00894-CG-GBW)
(D. N.M.)

Appellees.

---------------------

CAMPAIGN LEGAL CENTER,

Movant.

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE, McKAY** and **McHUGH**, Circuit Judges.

---

Katherine Han-Noggle, the daughter and next-of-kin of Mary Y.C. Han, and

Elizabeth Wallbro, Han's sister and the personal representative of her estate (Plaintiffs),

appeal the district court's dismissal of their claims brought pursuant to 42 U.S.C. § 1983

(Case. No. 14-2156).  Plaintiffs alleged that the Defendants, City of Albuquerque (City)

and nine of its officers (City Officers) improperly and inadequately investigated Han's

death, which resulted in the denial of Plaintiffs' constitutional rights to due process and

access to the courts.  On motion of the City Officers, the district court applied qualified

immunity to dismiss the federal claims and then remanded the state law claims.  The

district court subsequently awarded attorneys' fees to the Defendants, which has

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

3

generated both an appeal by the Defendants (Case No. 15-2051) and a cross-appeal by Plaintiffs (Case No. 15-2052).

## BACKGROUND

Plaintiffs' complaint alleged that Han was found dead inside her car in her garage. Han was discovered by her law partner, Paul Kennedy, who went to her home to check on her after she uncharacteristically did not call her office. Kennedy called 9-1-1 to report what "look[ed] like an accidental suicide." 14-2156 Aplt. App. at 11.[1] He reported that he had opened the car door to check on Han and discovered that "she was not breathing, was 'in rigor' and 'stiff.'" Id. Kennedy also reported that all four car windows were open when he arrived and that the engine was turned off, though "[he] guess[ed] it had been" running. Id. Officers from the Albuquerque Police Department (APD) responded to the call.

Plaintiffs' complaint alleged that initially Han's death was treated as an "unattended death/dead on arrival." Id. at 12. But after "several high-ranking members of the APD and high-ranking civilian employees of the City . . . arrived on the scene," her death was treated as a suicide. Id. at 2–3. Because of this change in classification, many investigative procedures were not followed, which Plaintiffs contend could have revealed whether Han's death was the result of foul play. "Specifically, neighbors, family, and close friends were not interviewed. Physical evidence was not collected. Fingerprints

---

[1] Because this appeal involves multiple cases with separate appendices, citations to an appendix are preceded by the corresponding case number.

4

were not preserved. No effort was made to determine the identity and interview the last person who may have seen . . . Han alive." Id. at 4. During the investigation, the City Officers allowed between twenty-six to fifty individuals to "trample the scene," which contaminated evidence and hindered the effectiveness of the investigation. Id. at 3. They also failed to inventory Han's expensive diamond rings, her personal cell phone, and her laptop, all of which disappeared during the investigation.

Two and a half years after Han's death, the New Mexico Attorney General's Office examined her death and the APD's subsequent investigation. It concluded, among other things, that "the death scene was terribly mishandled by the [APD] due to inappropriate directions from high-ranking police and civilian administrators with the city" and that "fundamental police procedures for suspicious deaths were inexplicably not followed." Id. at 30.

Plaintiffs initiated this lawsuit in state court alleging, among other things, that the City Officers' inadequate investigation violated their right to access to the courts by preventing them from bringing a wrongful death action. Defendants removed the case to federal court and then filed a motion to dismiss. The district court dismissed the federal claims, remanded the state claims, and entered judgment in favor of all Defendants. The Defendants subsequently moved for an award of attorneys' fees under 42 U.S.C. § 1988, requesting more than $60,000 in fees. After reducing the fees for non-frivolous claims, overbilling, duplicative work, and equitable considerations, the district court awarded

5

$5,000 in fees.  Plaintiffs appeal the dismissal of their right of access claim,[2] and both parties appeal the fee award.

JURISDICTION

The City Officers suggest that we are without jurisdiction because the district court's ruling was not a final, appealable order for purposes of 28 U.S.C. § 1291.  "[I]n this circuit, 'whether an order of dismissal is appealable' generally depends on 'whether the district court dismissed the *complaint* or the *action*.  A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final.'"  Moya v. Schollenbarger, 465 F.3d 444, 448–49 (10th Cir. 2006) (quoting Mobley v. McCormick, 40 F.3d 337, 339 (10th Cir. 1994)).  In making this distinction, "we look to the *substance* and *objective intent* of the district court's order, not just its terminology."  Id. at 449.  "In cases where the district court order is ambiguous, our approach is to determine as best we can whether the district court's order evidences an 'inten[t] to extinguish the plaintiff's cause of action,' and 'whether [the] plaintiff has been effectively excluded from federal court under the present circumstances.'"  Id. at 450 (alterations in original) (citation omitted) (first quoting Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 720

---

[2] The complaint separates this claim into two counts.  Count I is titled "Violation of substantive and procedural due process" and Count II is titled "Interference with plaintiffs' right of access to the courts."  14-2156 Aplt. App. at 32, 34.  However, Plaintiffs' briefs and statements made at oral argument make clear that both counts assert the same claim: interference with Plaintiffs' right of access to courts, which arises (in part) from the Due Process Clause of the Fourteenth Amendment.  Accordingly, we will treat these claims as one claim.

(10th Cir. 1989), *abrogated on other grounds by* <u>Fed. Lands Legal Consortium ex rel. Robart Estate v. United States</u>, 195 F.3d 1190, 1195–96 (10th Cir. 1999); and then quoting <u>Facteau v. Sullivan</u>, 843 F.2d 1318, 1319 (10th Cir. 1988)).

The City Officers emphasize that some of Plaintiffs' claims were dismissed for failure to allege sufficient facts, meaning that an amendment to add additional factual allegations could potentially cure the deficient complaint. A dismissal for this reason generally suggests the court intended to dismiss only the complaint, rather than the case as a whole. <u>See</u> <u>id.</u> at 453. However, other circumstances are present here which point toward the conclusion that the *case* was dismissed, not just the *complaint*. First, the order granting dismissal did not mention a leave to amend, which would have been required absent the opposing party's consent. <u>See</u> <u>id.</u> at 454 (no reference to leave to amend, at least when required for the case to proceed, "is at least some indication" that the court intended finality). Second, the district court filed a separate document titled "Final Judgment" on the same day that it entered the order. 14-2156 Aplt. App. at 164–65; <u>see</u> <u>Utah v. Norton</u>, 396 F.3d 1281, 1286 (10th Cir. 2005) ("[A] judgment is made final when it is 'set forth on a separate document' as is required by Fed.R.Civ.P. 58(a).").

The City Officers also note the district court's failure to specifically rule on the claims against the City. Failing to resolve all claims against all defendants suggests a lack of finality. <u>See</u> Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties."); <u>Norton</u>,

7

396 F.3d at 1286 ("A final judgment is one that terminates 'all matters as to all parties and causes of action.'" (quoting Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003))).  But other facts presented here suggest that the district court's failure to specify that it was also dismissing the claims against the City was inadvertent.  Although the court's *order* does not address these claims, the *judgment,* which was entered that same day, "dismisse[d] all [federal] claims *against all Defendants*." 14-2156 Aplt. App. at 165 (emphasis added).  Additionally, in granting qualified immunity to the City Officers, the court concluded that no constitutional violation occurred.  It follows that if the City Officers' actions did not violate Plaintiffs' rights, the City could not be held liable either. Jennings v. City of Stillwater, 383 F.3d 1199, 1205 n.1 (10th Cir. 2004) ("[A] municipality cannot be liable for constitutional violations unless its officers committed a constitutional violation.").

The City Officers also argue that the district court's failure to resolve the state law claims also suggests a lack of finality.  We note that although the district court did not resolve the merits of the state law claims, it did address these claims by remanding them to state court and thereby removing them from federal jurisdiction.  For purposes of finality, the remand of the state law claims left nothing for the federal district court to adjudicate.  See Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) ("Federal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district

8

court subsequently exercised its discretion under [28 U.S.C. ] § 1367 to remand supplemental state law claims to state court.").

Other circumstances also suggest that the district court intended to extinguish the Plaintiffs' federal causes of action. Namely, it awarded attorneys' fees in the case, cf. Moya, 465 F.3d at 454 (ordering each party to "bear their own costs and fees" indicates finality), and its dismissal was based on qualified immunity, see id. at 453 (granting qualified immunity suggests intent to dismiss the entire action). We conclude that the district court intended to resolve the entire case, leaving nothing further for resolution in federal district court. Accordingly, we conclude we have jurisdiction to proceed to the merits.

RIGHT OF ACCESS CLAIM

Plaintiffs allege that the City Officers inadequately investigated Han's death, which prevented them from bringing a wrongful death claim and thus interfered with their right of access to the courts. The district court dismissed this claim after concluding that the complaint failed to "provide sufficient notice of the grounds for a wrongful death suit to a potential defendant." 14-2156 Aplt. App. at 154. We review the dismissal de novo. Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014). In doing so, we accept all well-pled factual allegations as true and view them in the light most favorable to the Plaintiffs. Id. To withstand Defendants' motion to dismiss, Plaintiffs' complaint must contain sufficient allegations to "state a claim to relief that is plausible on its face." Ashcroft v.

9

<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Applying that standard, we affirm the dismissal.

The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002). Accordingly, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." <u>Id.</u> Although the Supreme Court did not "describe pleading standards for the entire spectrum of access claims," it did emphasize "the need for care in requiring that the predicate claim be described well enough to apply the 'non-frivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." <u>Id.</u> at 416. Moreover, it linked the pleading requirements for the underlying claim with the standards of Federal Rule of Civil Procedure 8(a). <u>Id.</u> at 417.

The complaint at issue here identifies only one potential underlying cause of action: a wrongful death claim. Under New Mexico law, the personal representative of an estate may bring a wrongful death claim where the decedent's death was "caused by the wrongful act, neglect or default of another . . . [and] is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." N.M. STAT. ANN. §§ 41-2-1 (stating the cause of action), 41-2-3

(identifying the personal representative as the proper party to bring such a claim).[3] The complaint provides no theory as to how Han died or who allegedly caused her death, let alone the type of action that Han would have had against the party at fault had she survived. The complaint only generally identifies a wrongful death claim, which is not enough to meet the pleading requirements of Rule 8. See Iqbal, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citation omitted) (quoting Twombly, 550 U.S. at 555)).

## ATTORNEYS' FEES

We review an award of attorneys' fees for abuse of discretion except "to the extent that the district court's decision was premised on an error of law," in which case we review de novo. Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1581 (10th Cir. 1995). Attorneys' fees can only be awarded to a defendant who prevails on civil rights claims that are "frivolous, unreasonable, or without foundation" Id. (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)). If a case involves multiple claims, only some of which are frivolous, the court can grant fees "only for costs that the defendant would not have incurred but for the frivolous claims." Fox v. Vice, 131 S. Ct. 2205, 2211 (2011).

The district court found that the due process claim (Count I) was frivolous, but that the remaining four claims, although lacking sufficient allegations to survive the City

---

[3] The standing of Han-Noggle to bring this claim was disputed below, but on appeal she concedes that a wrongful death claim can only be brought by the personal representative of the estate.

11

Officers' motion to dismiss, were not frivolous such that "'no reasonable attorney' would bring suit based on the facts alleged." 15-2051 & 15-2052 Aplt. App. at 410–12 (quoting Crabtree ex rel. Crabtree v. Muchmore, 904 F.2d 1475, 1479 (10th Cir. 1990)). The district court also found that the official capacity claims were frivolous, but that they did not result in "significant additional expenses" because they were "duplicative of the claims against the City." Id. at 410, 414. Based on these findings, the district court reduced the requested fees by eighty percent. Id. at 414–15. The court then further reduced the amount of fees in light of overbilling, duplicative work, and equitable considerations, ultimately concluding that $5,000 was a reasonable award.

Both parties contend that the district court erred in finding that one of the five claims was frivolous: Defendants argue that all of Plaintiffs' federal claims were frivolous, while Plaintiffs suggest that none were. Defendants further challenge the district court's other considerations, as well as the process by which the district court reached the ultimate award. Although we may have reached a different conclusion in a different manner, we conclude that the district court did not abuse its discretion. We affirm the fee award.[4]

---

[4] The Campaign Legal Center, a nonprofit organization that litigates voting rights matters and who is a party to an appeal from attorneys' fees in a different case against the City, has moved to file an amicus curiae brief in the attorneys' fees appeals. We deny the motion because the Center's case is too dissimilar and therefore its brief is not helpful in resolving the issues presented here.

CONCLUSION

The district court rulings are final and appealable, thereby providing us with appellate jurisdiction under 28 U.S.C. § 1291. We conclude that the district court did not err in dismissing Plaintiffs' denial of access claim. Nor did the district court abuse its discretion in awarding the Defendants $5,000 in attorneys' fees. Accordingly, we affirm.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

13