**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID EARL SHERO,

    Plaintiff - Appellant,

v.

CITY OF GROVE, OKLAHOMA,
subdivision of the State of Oklahoma;
GROVE CITY COUNCIL, subdivision
of the State of Oklahoma; WILLIAM
GALLETLY, also known as Bill
Galletly; DOROTHY PARKER;
IVONNE BUZZARD, also known as
Bonnie Buzzard; CAROLYN
NUCKOLLS; RANDY JOBE; DAVID
ADZIGIAN; DAVID HELMS,

    Defendants - Appellees,

           and

CHARLES ROWE; ROBERT NOLD,

    Defendants,

----------------------------

JACK L. SMITH,

    Movant.

No. 06-5222

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 05-CV-137-CVE-PJC)**

Mark T. Hamby, Bonham & Howard, P.L.L.C., Tulsa, Oklahoma, for Plaintiff - Appellant.

Thomas A. LeBlanc, (Matthew B. Free, and J. Spencer Bryan, Best & Sharp, and James C. Hodges, Eller & Detrich, on the brief), Tulsa, Oklahoma, for Defendants - Appellees.

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant David Earl Shero appeals from the district court's grant of qualified immunity to Defendants-Appellees Dorothy Parker (city attorney), William Galletly (city manager), and Ivonne Buzzard (city clerk) (collectively "City employees"). He also appeals from the grant of summary judgment in favor of Defendant-Appellee City of Grove, Oklahoma ("the City"). The district court granted qualified immunity to the above City employees on a motion to dismiss, essentially finding the absence of a constitutional violation. In a later opinion, the district court granted summary judgment for the City, finding that it had not violated any constitutional right, notwithstanding Mr. Shero's claims that the City denied him certain records, limited his speaking time at a city council meeting, and filed a state declaratory judgment suit against him allegedly in retaliation for requesting records. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

<u>Background</u>

In early 2003, Mr. Shero attended a Grove city council meeting and spoke in defense of a fired city employee. III Aplt. App. tab 16C at 34-35. He returned in the fall of 2003 to refute that the local airport board and a local contractor were engaging in criminal activity by removing dirt from airport property. <u>Id.</u> tab 16E at 84. He requested a copy of Ms. Parker's resume that same fall and Ms. Buzzard, the city clerk, denied his request after being instructed to do so by Mr. Galletly. Aplt. Br. at 4.

On January 2 and January 30, 2004, Mr. Shero requested a "council packet," a packet of information individually prepared for council members before each meeting containing agenda items and other information, from Ms. Buzzard. <u>See</u> III Aplt. App. tab 16 at 3; tab E at 66-68. He was denied each time, although previously he had been given copies. III Aplt. App. tab 16 at 3; IV Aplt. App. tab F at 19-20; Aplee. Br. at 4. Ms. Buzzard was following the advice of Ms. Parker who determined that the packets were not public after learning that Mr. Shero was receiving copies of council packets intended for a specific individual. III Aplt. App. tab 16 at 4-5; IV Aplt. App. tab F at 19-20; VI Aplt. App. tab 22 at 2. In between these denials, on January 6, 2004, Mr. Shero again spoke at a city council meeting, this time to voice his objections to being denied council packets and to allege that the council violated the Oklahoma Open Meetings Act ("OOMA"), Okla. Stat. tit. 25, § 301. II Aplt. App. part 2, tab 14K

at 1; Aplt. Br. at 9. Immediately after the January 30 denial, Mr. Shero's attorney informed Ms. Buzzard that Mr. Shero would pursue legal action to get the packets. III Aplt. App. tab 16 at 12.

On February 2, 2004, Ms. Parker (on behalf of the City) filed a state declaratory judgment action naming Mr. Shero as the defendant pursuant to the Oklahoma Declaratory Judgment Act, Okla. Stat. tit. 12, § 1651. I Aplt. App. tab 2, part 2 at 1-3. Ms. Parker titled the pleading a "Motion for Protective Order and Order Determining Certain Materials Exempt from Public Disclosure" and asked for declaratory relief and a protective order pursuant to the Oklahoma Open Records Act ("OORA"), Okla. Stat. tit. 51, § 24A.1. Id. The state court ordered a hearing on the request for a protective order that same day. Id. part 2 at 4. Mr. Shero filed an answer and counterclaim on February 9, 2004, seeking a ruling that the council packets and Ms. Parker's resume are open records not subject to any exception under OORA. Id. part 2 at 5-10. On March 23, 2004, the state court denied the City's request for a protective order, held that it lacked subject matter jurisdiction over the declaratory action, and concluded that Mr. Shero's counterclaim could proceed to trial. I Aplt. App. tab 2, part 4 at 33-34.

Mr. Shero attended another city council meeting on February 17, 2004. V Aplt. App. tab 17 at 11. During the portion of the meeting devoted to public comments, the mayor informed Mr. Shero that he would be limited to three minutes. Id. There were no other speakers present. Aplt. Reply Br. at 16. Mr.

- 4 -

Shero used his time to speak in opposition to the lawsuit against him and to speak about a district attorney opinion letter identifying the City as violating the OORA and the OOMA. II Aplt. App. tab 15E at 3. The parties dispute whether the City had a preexisting practice of limiting speakers during the public comments portion of city council meetings on February 17, 2004. See Aplt. Br. at 6; Aplt. Reply Br. at 17-18; Aplee. Br. at 15.

On April 26, 2004, the state court ruled that the council packets and Ms. Parker's resume are open records under state law and permanently enjoined the City from denying requests for these items. I Aplt. App. tab 2, part 6 at 3-5. Mr. Shero sought attorney's fees and on May 25, 2004, the parties entered into a settlement agreement wherein the City agreed to pay Mr. Shero approximately $28,000 in settlement of his claim for attorney's fees incurred in the state action. I Aplt. App. tab 2, part 6 at 37-38.

In March 2005, Mr. Shero brought this federal action against the City and some of its employees urging various claims pursuant to 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, § 151. On September 20, 2006, the district court dismissed the City employees based upon qualified immunity and ruled that Mr. Shero's claims are not barred by the doctrine of res judicata. VI Aplt. App. tab 21 at 15. In a subsequent ruling dated November 2, 2006, the district court granted summary judgment to the City on both sets of claims, including those pursuant to the GTCA. VI Aplt. App. tab 22

at 18-19.  The judgment concerning the GTCA claims is not on appeal.

Mr. Shero argues on appeal that the district court improperly granted summary judgment on his First Amendment claims that the City denied him certain records, limited his speaking time at a city council meeting, and filed a state declaratory judgment suit against him allegedly in retaliation for his expressive activities.  He contends that even if these actions do not amount to First Amendment deprivations, a genuine issue of material fact exists as to whether these actions chilled his First Amendment rights.  Finally, he argues that the City employees are not entitled to qualified immunity to the extent that we conclude that he has raised a viable constitutional claim.

### Discussion

We review the district court's grant of summary judgment for the City de novo, applying the same legal standard as the district court.  Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1250 (10th Cir. 2007).  Under Fed. R. Civ. P. 56(c), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the

burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation omitted).  The question then is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52  (1986).  "[O]n summary judgment, the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita, 475 U.S. at 587.

This court uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally.  Moya v. Schollenbarger, 465 F.3d 444, 455 (10th Cir. 2006).  Our review is de novo.  Fed. R. Civ. P. 12(b)(6); Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  In reviewing a dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party.  Moya, 465 F.3d at 455.  The complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

We first review the district court's grant of summary judgment for the

City.[1]  This review requires us to analyze whether Mr. Shero was deprived of any constitutional right when he was denied council packets by the City and when the mayor imposed a three-minute time limitation on his speech at the February 17, 2004 council meeting.  We also analyze whether the City unconstitutionally retaliated against Mr. Shero's speech at council meetings by denying him council packets, imposing the time limitation, and filing the declaratory judgment action in state court.  We address each issue in turn.[2]

---

[1]  The concurring and dissenting opinion suggests that Mr. Shero did not properly raise several of the claims we address.  The City has not made such an argument.  Part of the district court's rationale for granting summary judgment in favor of the City, urged by the City given its interpretation of the first amended complaint, II Aplt. App. tab 15 at 16-18, was that Mr. Shero had no First Amendment right to information.  VI Aplt. App. tab 22 at 6.  Plainly, this issue was developed before the district court, raised on appeal, and should be addressed by this court.  With respect to the three-minute time limitation, it was plainly addressed by the district court in the context of forum analysis on summary judgment, VI Aplt. App. tab 22, 12-15, and we think it adequately, if not artfully, raised here.  Aplt. Br. at 42; Aplt. Reply Br. at 15-19.  The First Amendment retaliation claim based on the denial of information and the three-minute time limitation was not raised below; we exercise our discretion to reach it, however, because the facts are sufficiently developed and its lack of merit is obvious.  See Singleton v. Wulff, 428 U.S. 106, 121 (1976).

[2]  The City, in addition to its other arguments, urges us to affirm the district court's judgment with respect to any of Mr. Shero's claims relating to the denial of council packets based upon the doctrine of res judicata.  Aplee. Br. at 20-23; see Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1088 (10th Cir. 2006) (noting "we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground") (internal quotations omitted).  Any of Mr. Shero's claims relating to the denial of council packets, it argues, are barred because the denials have already been litigated in state court.  See Aplee. Br. at 23.  The district court rejected the Defendants' res judicata argument, but invited the Defendants to apply issue preclusion "to narrow the issues in this case to ones that have not been previously

- 8 -

I.      Denial of Council Packets

Mr. Shero urges the court to reverse the district court's grant of summary judgment for the City because the City violated his First Amendment rights when it refused to provide him with council packets as required by state law. Aplt. Br. at 19. The City, Mr. Shero argues, interfered with his First Amendment right to gather news by means within the law. Id. At oral argument, Mr. Shero's counsel stated that the two best cases in support of this theory are Houchins v. KQED, Inc., 438 U.S. 1 (1978) (plurality opinion) and Capital Cities Media, Inc. v. Chester, 797 F.2d 1164 (3d Cir. 1986) (en banc). We do not think either establishes this point, nor does any other case that we can find. Both, in actuality, lead to the opposite conclusion.

The Supreme Court in Houchins recognized that "[t]here is an undoubted right to gather news from 'any source by means within the law.'" 438 U.S. at 11 (quoting Branzburg v. Hayes, 408 U.S. 665, 682 (1972)). The Court tempered this language, however, by stating that this right "affords no basis for the claim that the First Amendment compels others—private persons or governments—to supply information."[3] Id. In addition, we have previously acknowledged that

_____

litigated." At best, affirming the judgment on this basis would only resolve part of Mr. Shero's appeal, and because we wholly affirm the district court on First Amendment grounds, we need not accept this invitation.

[3] Although Houchins is a plurality opinion of a seven-member Court joined by three members, Justice Stewart concurred in the judgment and wrote that "[t]he First and Fourteenth Amendments do not guarantee the public a right of

- 9 -

"[a]ny reference in Supreme Court precedent to constitutional entitlement of the public to information held by the government 'mean[s] no more than that the government cannot restrain communication of whatever information [is in fact acquired].'" Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1512 (10th Cir. 1994) (quoting Houchins, 438 U.S. at 10) (alterations in original). Clearly, then, Mr. Shero has no First Amendment right to receive the council packets from the City, but rather only a state right under the OORA as the state court held. The City is not compelled by the *First Amendment* to provide information to Mr. Shero but must only provide the council packets to him under *state* law, and Mr. Shero has already received his remedy in state court.

Nothing the Third Circuit said in Chester changes the interpretation of Houchins. Although the Chester court noted that the First Amendment Free Speech Clause "bar[s] government interference with the flow of information and ideas to the public" and that "[t]here is an undoubted right to gather news from any source by means within the law," it qualified this language by stating that "[i]t simply does not seem reasonable to suppose that the free speech clause would speak, as it does, solely to government interference if the drafters had thereby intended to create a right to know and a concomitant governmental duty to disclose." 797 F.2d at 1167-68 (emphasis omitted) (internal quotations

---

access to information generated or controlled by government" and he "agree[d] substantially" with what the plurality opinion said on that topic. 438 U.S. at 16 (Stewart, J., concurring in the judgment).

omitted).  As Mr. Shero has shown no "interference" by the City other than its actual denial of his requests for the council packets–and there is no constitutional "duty to disclose"–he has no actionable claim under § 1983 on this basis.

II.    Speech Limitation

Mr. Shero next argues that the three-minute time limitation on his speech imposed by the mayor during the public comments portion of the February 17, 2004 city council meeting constituted a prior restraint in violation of his First Amendment rights and that the district court erred when it ruled otherwise.  Aplt. Br. at 43.

Under our precedent, it is not entirely clear whether a city council meeting should be treated as a "designated public forum" or a "limited public forum."  A "designated public forum" is created when the government "intentionally open[s] a nontraditional public forum for public discourse."  Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998) (internal quotation omitted).  The government's action in excluding a member of a class to which a designated forum is made generally available is subject to strict scrutiny.  Id.  A "limited public forum," on the other hand, "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum." Summum v. City of Ogden, 297 F.3d 995, 1002 n.4 (10th Cir. 2002) (internal quotation omitted).  Any government restriction on speech in a limited public

forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral. Rosenberger v. Rectors and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995). We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on Mr. Shero's speech satisfies the more stringent strict scrutiny standard.

In a designated public forum, "the government may only impose content-neutral time, place, and manner restrictions that: (a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." PeTA v. Rasmussen, 298 F.3d 1198, 1204 (10th Cir. 2002) (citing Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). The three-minute time limitation imposed on Mr. Shero's speech was a restriction appropriately designed to promote orderly and efficient meetings. See Rowe v. City of Cocoa, Fla., 358 F.3d 800, 803 (11th Cir. 2004); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984); V Aplt. App. tab A at 1. In addition, Mr. Shero had ample alternative channels of communication available to him and utilized them by, among other things, appearing in a local newspaper and circulating flyers. V Aplt. App. tab 17E at 1-2; tab I at 1; Aplee Br. at 9.

III.    Retaliation

Mr. Shero next challenges the district court's determination that he did not experience any unconstitutional retaliation by the City for exercising his First Amendment rights. Aplt. Br. at 46. Mr. Shero alleges that the City retaliated

- 12 -

against and attempted to chill his speech about government corruption at city council meetings by rejecting his requests for council packets, placing a time limit on his speech at the February 17, 2004 city council meeting, and filing a declaratory judgment suit against him. Id. at 19-20. The district court analyzed whether the City retaliated against Mr. Shero for requesting council packets and not whether it retaliated against him for his speech about city corruption. Even expanding our analysis to recognize, however, that the City's acts could have been in response to Mr. Shero's constitutionally protected speech at the city council meetings, we conclude that Mr. Shero has not demonstrated unconstitutional retaliation. The district court's decision was essentially correct on this issue.

In Worrell v. Henry, we considered the elements necessary for a retaliation claim where the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff. See 219 F.3d 1197, 1212 (10th Cir. 2000). Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. Id. (quotations

omitted).  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or de minimis injury will not support a retaliatory prosecution claim."  Eaton v. Meneley, 379 F.3d 949, 954-55 (10th Cir. 2004) (internal quotation omitted).

Although Mr. Shero was engaged in constitutionally protected activity when he alleged government corruption during the public comments portion of the city council meetings, see Nat'l Ass'n for the Advancement of Colored People v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982), the City's actions would not, as a matter of law, chill a person of ordinary firmness from continuing to speak out.  See Worrell, 219 F.3d at 1212.  Indeed, the City's denial of his requests for council packets and the mayor's implementation of a time limitation on his speech are, at best, de minimis injuries.  See Eaton, 379 F.3d at 954-55.  Mr. Shero has not shown that his discourse with the council was inhibited in any way by the denials of the council packets or the three-minute speech limitation.  He remained "free to express [his] views publicly and to criticize" the city council, id. at 956 (internal quotation omitted), and, in fact, he did.

Furthermore, being properly named as a defendant in a declaratory judgment suit, however styled, would not chill a person of ordinary firmness from continuing to engage in constitutionally protected activity.  See Worrell, 219 F.3d at 1212.  "The nature and purpose of a declaratory judgment is to declare rights,"

not to attack the opposing party.  Degarza v. Okla. City Univ., 20 P.3d 152, 153 (Okla. Civ. App. 2000).  In particular, under Oklahoma's Declaratory Judgment Act, Okla. Stat. tit. 12, § 1651, the state court was prohibited from awarding damages against Mr. Shero.

IV.    Qualified Immunity

Finally, Mr. Shero urges us to reverse the district court's grant of qualified immunity to Ms. Parker, Mr. Galletly, and Ms. Buzzard because they violated his constitutional rights.  Aplt. Br. at 57.  Our conclusions above require us to affirm the district court.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The privilege is an immunity from suit rather than a mere defense to liability.  Serna v. Colo. Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006).  This court uses a step-by-step, three-part test in analyzing a qualified immunity defense: (1) whether the plaintiff's allegations, if true, establish a constitutional violation (if not, the claim is dismissed); (2) whether the law was clearly established at the time the alleged violations occurred; and (3) whether extraordinary circumstances–such as reliance on the advice of counsel or on a statute–so prevented the official from knowing that his

or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right. <u>Gomes v. Wood</u>, 451 F.3d 1122, 1134 (10th Cir. 2006).

We have held above that, as a matter of law, the City and its employees' actions in rejecting Mr. Shero's requests for council packets, limiting his speaking time at a city council meeting, and filing a declaratory judgment suit against him did not violate Mr. Shero's First Amendment rights or constitute unconstitutional retaliation. As there was no constitutional violation, <u>see</u> <u>id.</u>, the district court's grant of qualified immunity to the City employees was appropriate.

AFFIRMED.

No. 06-5222, <u>Shero v. City of Grove, et al.</u>

**BRISCOE**, Circuit Judge, concurring in part and dissenting in part:

The majority affirms the district court's grant of summary judgment in its entirety. Although I concur in the judgment affirming the ruling against Shero with regard to his claims arising out of the denial of the city council packets and the time limitation, I conclude that the majority unnecessarily addresses the merits of those claims. With regard to Shero's claim that the filing of the declaratory judgment action against him constituted retaliation for exercising his First Amendment rights, I respectfully dissent. I would reverse and remand this issue for further proceedings.

I.      *The city council packets*

The majority concludes that the defendants could not have violated Shero's First Amendment rights by denying him the city council packets. Because Shero relied on a different theory before the district court, I would not address the merits of this claim.

Shero argues before this court that the defendants interfered with his "First Amendment right to seek information" by denying him the city council packets. Aplt.'s Br. at 37. The right to seek information is a corollary to the freedom of the press. In <u>Branzburg v. Hayes</u>, 408 U.S. 665, 681 (1972), the Supreme Court remarked that "without some protection for seeking out the news, freedom of the press could be eviscerated." Accordingly, the Court has noted that "[t]here is an

undoubted right to gather news 'from any source by means within the law.'" Houchins v. KQED, Inc., 438 U.S. 1, 11 (1978) (quoting Branzburg, 408 U.S. at 681-82). Shero relies on these cases to support his First Amendment claim that he had a right to the city council packets.

Shero asserts this theory for the first time on appeal. In his complaint before the district court, Shero relied on the First Amendment right to petition the government for redress. See Compl., Vol. I, ex. 4, ¶ 31. In later filings, Shero purported to rely on "the rights to Free Speech [and] to Petition the Government for Redress . . . ." Pl.'s Mot. for Summ. J., Vol. III, ex.16, at 6; see also Pl.'s Resp. to Def.'s Mot. for Summ. J., Vol. VI, ex. 18, at 9-13. Shero based his claim on the theory that the documents were necessary for him to exercise his right to petition the government effectively. Whether Shero's right to petition the government was violated was the issue the district court addressed when it identified Shero's claim in its ruling: "Shero claims that his requests for council packets were in furtherance of his right to petition the government, because the information in the council packets was necessary for him to present informed arguments to the City Council." Op. & Order, Aplt.'s Br., Appx. B, at 6. All of the arguments he made to the district court were tailored to this theory. Shero never argued that the defendants' actions denied him his rights under the First Amendment's guarantee of freedom of the press. He never referenced a "right to seek information" or a "right to gather news from any source by means within the

- 2 -

law" apart from his invocation of the right to petition.  Although the defendants, in their motion for summary judgment, cited several cases on this point, see Def.'s Mot. for Summ. J., Vol. II, ex. 15, at 16-18, Shero never relied on these cases, and he continued to maintain that denial of the packets violated his First Amendment right to petition the government for redress.  As a result, this argument was neither squarely presented to the district court, nor addressed by the district court.

"Absent compelling reasons, we do not consider arguments that were not presented to the district court." Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994).  Although we have discretion to address arguments raised for the first time on appeal, we generally exercise that discretion only "where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice." Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. 1991).  The first two exceptions clearly do not apply here, and there is no reason to believe that a miscarriage of justice would result from a refusal to consider this issue. Shero has been represented by counsel throughout this litigation.  He has had a number of opportunities to advance this theory before the district court: in his initial complaint, his amended complaint, his motion for summary judgment, his response to the opposing parties' motion to dismiss, and his response to their motion for summary judgment.  Despite these opportunities, Shero never

- 3 -

mentioned the "right to seek information" or to "gather news" now claimed in his brief.

The danger of permitting an appellant to raise even a related issue on appeal is evident here: although the defendants address this argument in their brief, they are understandably confused about what Shero is arguing, and they devote the bulk of their arguments to rebutting any claim that they violated Shero's right to petition the government for redress. See Aples.' Br. at 23-26. By considering this issue, the majority "run[s] the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision." Hill v. Kemp, 478 F.3d 1236, 1251 (10th Cir. 2007) (citation and quotation marks omitted). "[T]o avoid error, we are dependent on the full development of issues through the adversarial process and the initial testing of ideas in trial courts where advocates have an opportunity to present more than thin briefs and fifteen minute oral arguments." Id. While Shero's theory may have little merit, I am hesitant to foreclose relief to litigants in future cases with similar facts by ruling on this issue without the benefit of the district court's insight and full, well-reasoned argument by the parties. Because Shero failed to argue that his "right to seek information" was violated before the district court, I would not now consider it.

## II. The time limitation at city council meetings

The majority also concludes that the defendants could not have violated

Shero's First Amendment rights by limiting his speaking time at city council meetings to three minutes. Because Shero has failed to present a clear enunciation of the issue or authority to support it, I would not address the merits of this argument either.

The majority assumes that Shero is challenging the district court's application of First Amendment forum analysis, and affirms the district court on this basis. (Maj. Op. at 10-12.) It is not apparent that Shero has reasserted the same argument that he made to the district court. On appeal, he often appears to be arguing that the time limitation supports his claim for retaliation. This is clearest in his reply brief, in which Shero devotes an entire section to arguing that the "unprecedented limitation by Grove was in retaliation for Shero publicly speaking out against corruption." Aplt.'s Reply at 15. Shero also failed to argue this aspect of his retaliation claim before the district court, and for the same reasons already stated, we should not now consider it.

As for the district court's forum analysis, Shero purports to "concur[] with . . . the District Court's conclusion on allowing members of the public to speak" and its "conclusion about opening facilities to speakers," but nonetheless argues that it "erred in ruling that, as a matter of law, Shero's First Amendment rights were not implicated by the limitation." Aplt.'s Br. at 42-43. If this language in fact challenges the district court's forum analysis, Shero has not provided us with any reason to question the district court's ruling. He cites only four cases in the

- 5 -

section of his brief devoted to the time limitation, see id. at 42-45, and two of these cases simply provide broad statements of the purposes behind the First Amendment. While the other two cases might conceivably apply, Shero provides no discussion of whether they apply, and if so, how they should be applied. He provides no guidance as to what type of forum a city council meeting is, what standard we should apply here, how we should apply the standard to these facts, or whether we should even apply forum analysis at all.

Because Shero fails to present reasoned argument on this point, I would not consider it. Where "there are a few scattered statements" in an appellant's brief that "suggest dissatisfaction" with the district court's ruling, as there are here, we have held that "such perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review." Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). The reason is clear. In order to reverse the district court's determination, we would have to fashion an argument in Shero's favor ourselves. However, "the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991). Further, as is the case with issues that were not argued below, to rule on this issue "would run the risk of an improvident or ill-advised opinion[.]" Kemp, 478 F.3d at 1251.

The danger of rendering an ill-advised opinion is particularly prevalent with regard to this claim, which presents legal issues of first impression in this

- 6 -

circuit.  See (Maj. Op. at 11.)  The majority may be correct that in most cases, a limitation on speaking time at a public meeting is a permissible restriction on speech—at least when that limitation is imposed pursuant to an official policy established prior to the meeting.  In this case, however, there are additional allegations that no official policy was in place prior to the meeting and that Shero was the only speaker subjected to a time limitation.  According to Shero, no official policy of limiting speakers was imposed until long after the challenged time limitation was imposed.  The cases cited in the majority's opinion dealt with limitations imposed pursuant to an official policy that was already in place at the time of the meeting.  See Rowe v. City of Cocoa, Fla., 358 F.3d 800, 803 (11th Cir. 2004); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984).  They provide no clear guidance as to how the very different facts presented in this case may affect our decision.

By considering this issue, the majority has not only run the risk of an ill-advised opinion, but has also addressed an issue that Shero may not have even raised.  I would not address the merits of this issue.

III.    *Shero's retaliation claim*

The majority concludes that there is no merit to Shero's claim that because he spoke out at city council meetings and expressed concern about the actions of city council members, the defendants retaliated by filing a declaratory judgment

action against him.[1]  I disagree.

The majority applies our three-factor test for the likely success of a retaliation claim, considering whether (1) Shero was engaged in constitutionally protected activity; (2) the defendants' action caused Shero to suffer an injury that would chill a person of ordinary fitness from continuing to engage in that protected activity; and (3) the defendants' action was substantially motivated as a response to Shero's constitutionally protected conduct.  (Maj. Op. at 13 (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).)  As the majority correctly notes, Shero claims that the alleged retaliation resulted from his continued criticism of members of the city council, both at city council meetings and in other fora.  This is an unquestionably protected activity, and the first prong of the test is therefore satisfied.  The majority does not believe, however, that the filing of the action against Shero can meet the second prong of the test.  The majority reaches this conclusion because, first, the purpose of a typical declaratory judgment action is to declare rights, and second, Shero could not be ordered to pay damages.  (Maj. Op. at 14.)

We have previously recognized that "a governmental lawsuit brought with the intent to retaliate against a citizen for the exercise of his First Amendment

---

[1] The majority also addresses Shero's claim that the document denials and time limitation were in retaliation for his constitutionally-protected speech. Because these claims were not presented to the district court, I would not consider them for the same reasons stated above.

- 8 -

rights is itself a violation of the First Amendment and provides grounds for a § 1983 suit." Beedle v. Wilson, 422 F.3d 1059, 1066 (10th Cir. 2005) (holding that libel action by county hospital was sufficient injury to chill exercise of rights). While this lawsuit may differ from others because Shero could not be held liable for monetary damages, there are other disadvantages to being named as a defendant in a declaratory judgment action. Shero was forced to devote time and effort to the defense of the action, and although he was eventually awarded attorney's fees, this result was not known until after he had utilized his own assets in order to pay his initial costs. See Aplt.'s Br. at 49. Looking at the suit prospectively, moreover, he may have been unaware of the possibility or likelihood of recovering attorney's fees. The prospect of having to pay one's own costs may alone be enough to dissuade a person from continuing to engage in constitutionally protected speech. Further, the filing of a lawsuit, while a matter of course for attorneys, is a significant matter for private citizens. Cf. Bell v. School Bd. of City of Norfolk, 734 F.2d 155, 158 (4th Cir. 1984) (Rosenn, J., concurring) (noting that a plaintiff who is "untutored in the niceties of the law" might feel threatened by a lawsuit in which no damages could be awarded "to the extent of being reluctant to speak quite as freely with the suit hanging over her head as she would have been without it"). A reasonable factfinder could conclude that the filing of the state court action, if in fact undertaken in retaliation for Shero's criticism of city council members, was sufficient to "chill a

person of ordinary fitness from continuing to engage in that activity," thus satisfying the second prong.

Moreover, in concluding that the purpose of this declaratory judgment action was to declare the respective rights of the parties, the majority impermissibly resolves an issue of material fact regarding the third prong, the defendants' intent in filing the action. Although the declaratory judgment action might have been nothing more than a good-faith attempt to resolve a controversy, this appeal is taken from a grant of summary judgment, and we must view the evidence in the light most favorable to Shero. Even in the absence of direct evidence of a retaliatory intent in the record, circumstantial evidence may very well support a finding that the defendants intended to retaliate and to dissuade Shero from speaking out against the city council. See Bloch v. Ribar, 156 F.3d 673, 682 (6th Cir. 1998) ("[P]roof of an official's retaliatory intent rarely will be supported by direct evidence of such intent.").

For example, in her deposition, Grove's city attorney, Dorothy Parker, explained why she had filed the action, stating that "Mr. Shero had begun calling attention to himself and to his complaints against the City." Vol. III, ex. 16-E, at 83. She explained that in filing the action, she sought to "reduce . . . some of the covert hostility that appeared to be simmering below the surface and was starting to bubble up based on the public expressions at the council meetings, public expressions on the street." Id. She continued:

> [P]eople were being embarrassed because, number one, they were not drawing attention to themselves. Mr. Shero was seeking and getting attention. And it was. He was saying things. He was saying things about me that were not true. Absolutely he would say things at me that were just absolutely not true . . .
>
> I don't know how Mr. Shero got all this media attention. But he was on the local radio. He was in the local papers. He managed to get an interview on television. And in these publicity events that he would have, he would make statements either about myself or about the City manager or about the elected officials that were not necessarily supported by fact. And it did cause embarrassment, because as soon as this case out, you know, our phones started ringing . . .
>
> And his comments to the press, his comments on the radio, his comments to the newspaper and his comments on the television. He just didn't limit his comments to City Council meeting[s]. And all of these comments did result in embarrassment to the – – to my client.

Id. at 84-87.

As Parker's testimony indicates, Shero's public comments had been a source of some consternation and embarrassment for city officials, and a factfinder could reasonably infer that the filing of the action was in retaliation for Shero's criticism of city council members and other public commentary. That there is another, perfectly legal explanation for the filing of the lawsuit does not prevent Shero from recovering. "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990) (citation and quotation marks omitted).

Because there is evidence in the record that would support all three prongs

of the test for retaliation, I would hold that the district court's grant of summary

judgment to the defendants on Shero's retaliation claim was in error, and reverse.[2]

---

[2] The majority also affirms the district court's dismissal of Shero's claims against the individual defendants on the basis of qualified immunity, because it does not believe there has been any constitutional violation. I would also reverse this judgment as to the individuals involved in the retaliation claim against Shero. I think it is premature to grant qualified immunity by assuming the defendants' actions were not in retaliation for expressing protected speech.