FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DR. TINSLEY ARIANA TAYLOR M.
SARAMOSING,

      Plaintiff - Appellant,

v.

KEVIN CORBETT, as Cabinet Secretary
of the Oklahoma State Department of
Health; KEITH REED, in his capacity as
Interim Commissioner of the Oklahoma
State Department of Health; KELLY
BAKER, "Baker," Deputy Registrar of
Vital Records, Oklahoma State Health
Department; TIM TIPTON, in his capacity
of Commissioner of Public Safety of the
Oklahoma Department of Public Safety,

      Defendants - Appellees.

No. 23-6043
(D.C. No. 5:21-CV-01152-PRW)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **BACHARACH**, **KELLY**, and **LUCERO**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Dr. Tinsley Ariana Taylor Makayla Saramosing appeals from the district court's dismissal without prejudice of her civil rights complaint for lack of Article III standing. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

**BACKGROUND**

Dr. Saramosing is "a female who is transgender and has medically and socially transitioned." R. at 21. She was born and still lives in Oklahoma. R. at 19. She has "had both legal name and gender marker changes made to her driver's license, passport, birth certificate and social security card." R. at 21.

Bringing a complaint under 42 U.S.C. § 1983 and other federal laws, Dr. Saramosing sued officials from Oklahoma's Department of Health and Department of Public Safety, in their official capacities. She alleged that Oklahoma requires transgender individuals to undergo permanent medical transitions before they can obtain amended Oklahoma birth certificates, and that Oklahoma notates changes to names or gender on amended birth certificates. She challenged those requirements as unconstitutional and discriminatory. As relief, she requested: (1) temporary and permanent injunctive relief precluding Oklahoma from "requiring hormones, surgery or anything that might otherwise permanently sterilize an

---

[1] "A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final." *Moya v. Schollenbarger*, 465 F.3d 444, 449 (10th Cir. 2006) (internal quotation marks omitted). But "an order is not necessarily devoid of finality simply because it speaks in terms of dismissal of a complaint." *Id.* The district court's dismissal "practically disposed" of the entire action and thus was a final decision. *Id.* at 450.

individual who is transgender, nonbinary, gender-fluid, etc., as a part of its requirements for a legal gender marker and name change(s) on any individual's government documents," R. at 109; (2) temporary and permanent injunctive relief requiring Oklahoma "to immediately and permanently remove the notations of the amendments to the Plaintiff's name and gender marker changes, as well as those of others who are transgender/non-binary, gender non-conforming, gender fluid, etc., which are presently located at the bottom of her/their birth certificate(s)," R. at 110; (3) temporary and permanent injunctive relief precluding Oklahoma (a) from refusing to amend "birth/death certificates/drivers' licenses" of transgender individuals, and (b) from making "notations of any amendments to the birth/death certificates of individuals who are transgender/non-binary, gender fluid, gender non-confirming, etc.," R. at 111; (4) that the district court strike down the Oklahoma statute requiring notations of amendments "insofar as it pertains to the adding of notations of amendments regarding the names and gender changes to birth and death certificates of individuals who are transgender/non-binary/gender-fluid/gender non-conforming," R. at 112; (5) that the district court order the removal of gender/sex identifiers in state and federal government documents for individuals who desire such relief; (6) costs and fees; and (7) "any and all legal and equitable financial and other relief . . . as the judge of this Court deems just and proper," including compensatory damages, R. at 112-13.

The defendants moved to dismiss for several reasons, including lack of Article III standing. The district court held that Dr. Saramosing had not adequately

3

pleaded standing for the claims she asserted and relief she requested. First, it held that she could not rest her claims on harm suffered by other persons. Second, it held it could not redress her for any past harms she alleged, because past harm is compensated by money damages, but the court could not award money damages against defendants in their official capacities. And third, it held that her allegations of present and future harm from the notations on her amended birth certificate were speculative and insufficient to show an imminent and concrete injury in fact.

Dr. Saramosing appeals.

## DISCUSSION

### I.     Legal Standards

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is Dr. Saramosing's burden to establish her standing. *See id.* at 561. We review a plaintiff's Article III standing de novo. *See Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272 (10th Cir. 2018).

Standing has three elements: (1) an "injury in fact," (2) that "fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court," and (3) that is likely to be redressed by a favorable decision. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993) (internal quotation marks omitted). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]," *Spokeo, Inc. v. Robins*, 578 U.S.

4

330, 338 (2016) (ellipsis and internal quotation marks omitted), and "a plaintiff must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

Because Dr. Saramosing proceeds pro se, we construe her filings liberally, but she must comply with the same rules as other litigants. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not act as her "attorney in constructing arguments and searching the record." *Id.*

## II.    Analysis

The district court did not err in concluding that Dr. Saramosing's first amended complaint (the Complaint) failed to establish her Article III standing to pursue this litigation.[2]

The Complaint indicates that Dr. Saramosing already has medically transitioned and received an amended birth certificate. Thus, any injury to her from Oklahoma's alleged policy of requiring permanent medical transitions before amending vital records took place in the past. Past harm is compensable only by monetary damages. *See Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1498 (10th Cir.

---

[2] To the extent that the Complaint invoked harms to others, Dr. Saramosing cannot represent anyone other than herself because she is not an attorney. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring [her] own claims to federal court without counsel, but not the claims of others."). But "[t]his analysis is clearly rooted in principles of prudential, rather than Article III, standing." *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 (10th Cir. 2017).

1995).  But the Complaint names state officials in their official capacities as the defendants, and a plaintiff cannot sue state officials in their official capacities for money damages under § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that States and their officials sued in their official capacities are not "persons" under § 1983).[3]  With neither injunctive relief nor money damages available to redress past harms in this action, Dr. Saramosing has failed to establish the redressability element of standing for those claims.

The Complaint also alleges present and future harm from having to show an amended birth certificate with notations, postulating what might happen if Dr. Saramosing had to produce her birth certificate because she wished to get married overseas, wished to attend a conservative private university and participate in team sports, or was required to serve time in jail or prison.  But the Complaint speaks in hypotheticals; it fails to establish an "injury in fact" for standing purposes because it does not contain sufficient facts to show any of those events were likely to happen imminently.[4]

---

[3] Before the district court, Dr. Saramosing withdrew her request for money damages (except for costs) in light of the defendants' Eleventh Amendment arguments.  The Complaint also named other federal statutes, but Dr. Saramosing has not argued that money damages would be available under any of those statutes.

[4] On appeal, Dr. Saramosing avers that after filing the Complaint, she married overseas and sought admission to a private university, and she discusses other post-Complaint events.  But standing is evaluated as of the time an action begins. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013). Accordingly, events that occurred after she filed the Complaint do not establish standing to proceed in this action.  For that reason, we deny Dr. Saramosing's motion to supplement the record on appeal with new supporting evidence.

The Supreme Court recently reminded:

> Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Allegations must be sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" to support standing. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). "A concrete injury must be *de facto*; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—real, and not abstract." *Spokeo, Inc.*, 578 U.S. at 340 (citation and internal quotation marks omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks omitted). In short, speculation about potential future events does not support Article III standing to seek injunctive relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013); *Whitmore v. Arkansas*, 495 U.S. 149, 157-58 (1990); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

Finally, Dr. Saramosing asserts that the district judge was biased against her because of his conservative political beliefs and lack of experience with the transgender community. Particularly, she states that "[i]n their written responses, Defendants repeatedly misgendered & deadnamed Plaintiff, and they also used

7

anti-transgender slurs," but the district judge "at no time rebuked Defendants' actions even when Plaintiff directly protested, thus displaying prejudicial bias." Aplt. Opening Br. at 2. But she does not provide any record cites. In the course of our review of the record, we saw nothing to demonstrate bias or prejudice on the part of the district court. To the extent her argument is based on the judge's adverse ruling, that is insufficient to demonstrate prejudice. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

Dr. Saramosing's district-court and appellate filings are replete with passionate arguments. It is well-established, however, that "[s]tanding is not measured by the intensity of a party's commitment, fervor, or aggression in pursuit of its alleged right and remedy. Nor is the perceived importance of the asserted right a substitute for constitutional standing." *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (citations omitted). The Complaint fails to show a concrete, imminent, non-speculative injury to Dr. Saramosing that is redressable by the court. It therefore fails to establish Dr. Saramosing's Article III standing to pursue this litigation.

## CONCLUSION

We affirm the district court's judgment. We deny Dr. Saramosing's motion to supplement the record on appeal with new evidence.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge