**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TREVOR PULLER; DEANDRE
HUTCHINSON,

     Plaintiffs - Appellants,

v.

NICHOLAS GRECO; NICODEMUS
WERTH,

     Defendants - Appellees.

No. 25-1028
(D.C. No. 1:23-CV-00843-GPG-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

Before **HARTZ**, **EID**, and **ROSSMAN**, Circuit Judges.

_____

In a suit under 42 U.S.C. § 1983 and Colorado law, Trevor Puller and

Deandre Hutchinson (collectively, Plaintiffs) asserted Denver police officers

Nicholas Greco and Nicodemus Werth (collectively, Defendants) subjected them to

false arrest and malicious prosecution.  The district court dismissed Plaintiffs' claims

under Fed. R. Civ. P. 12(b)(6), awarding Defendants qualified immunity.  Plaintiffs

---

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appeal the dismissal of their § 1983 claims.[1]  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.[2]

## I

We take the facts from Plaintiffs' second amended complaint and from a High

Activity Location Observation (HALO) surveillance video in the record.[3]

Around 2 a.m. on April 4, 2021, people were walking and congregating on the

sidewalks in the lower downtown area of Denver, Colorado.  Plaintiffs, both Black

men in their mid-20s, were in Mr. Puller's car.

---

[1] Plaintiffs make no arguments regarding their state-law claims.  They therefore have waived any challenge to the dismissal of those claims.  *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

[2] The district court dismissed Plaintiffs' claims without prejudice.  A dismissal of claims (as opposed to dismissal of an action) and a dismissal without prejudice may indicate the decision is not final and appealable under § 1291.  *See Moya v. Schollenbarger*, 465 F.3d 444, 450-51 (10th Cir. 2006).  But the district court noted Plaintiffs already had filed three versions of the complaint and declined to allow another opportunity to amend.  *See id.* at 450-51 ("[W[here a district court dismissal expressly *denies* the plaintiff leave to amend, . . . that dismissal (even if it is ambiguous or nominally of the complaint) is for practical purposes of the entire action and therefore final.").  And it entered a separate judgment under Fed. R. Civ. P. 58 closing the case.  We therefore conclude the decision is final and appealable.

[3] We may review the HALO video without converting Defendants' Rule 12(b)(6) motion into a motion for summary judgment because it is referenced in and central to Plaintiffs' second amended complaint and the parties do not dispute its authenticity.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017); *see also Luethje v. Kyle*, 131 F.4th 1179, 1188-89 (10th Cir. 2025) (considering audio 911 call mentioned in complaint, but not audio omitted from the complaint).

Mr. Puller was driving south on Blake Street, with Mr. Hutchinson in the front passenger seat. Mr. Puller turned left on 19th Street, heading east, and pulled close to the curb on the south side of the street. Mr. Hutchinson was leaning out the passenger window. Within seconds an unidentified Black male pulled out a pistol and shot at Plaintiffs. Multiple bullets hit the car. Mr. Puller accelerated and quickly turned into an alley intersecting 19th Street between Blake Street and Market Street.

As it turned out, Denver police were already in the area. And someone diagonally across the intersection of Blake and 19th Street, behind Plaintiffs' car, had been shot when the unidentified Black male shot at Plaintiffs' car. Moments after Mr. Puller's car had been shot on 19th Street, Denver police officer Simmons pulled behind Plaintiffs' car. At some point, he activated his emergency lights and rammed Plaintiffs' car to prevent them from leaving. Mr. Puller had his arms up, yelling something to the effect of, "I didn't do it, they were shooting over there!" Aplts. App. at 19 (internal quotation marks omitted). Officer Simmons, along with other officers, handcuffed Plaintiffs and arrested them.

Officers interviewed the person who had been shot (A.S.) and another person who had been injured (M.R.). A.S. told officers he did not recall seeing a vehicle or the shooter. M.R. told them she believed she had been shot by a Black male wearing a mask and firing a gun into the air. (M.R. had not been shot, however, and instead had been drunk and injured by falling.)

About four hours after Plaintiffs were arrested, Officer Greco filed a probable cause statement to support the arrest. Officer Werth also was involved with drafting

3

the statement, in which Defendants incorrectly characterized Plaintiffs as gang members.  Plaintiffs were charged with 19 counts of attempted murder.

Sometime after Plaintiffs were arrested and charged, Denver police found a gun in Mr. Puller's car, but the gun was fully loaded and had not been fired.  Police collected shell casings from the scene, but there was no evidence those casings were connected to Plaintiffs.  And at the end of April, the police received reports showing neither Plaintiff had gunshot residue on their hands when they were arrested.  Officer Greco did not disclose this exculpatory evidence to the Denver District Attorney's Office, even though both he and Officer Werth knew Plaintiffs were being offered plea deals for 39 years to life in prison.

At a bail modification hearing about four months after the arrest, Plaintiffs' private attorney played the HALO video in open court.  The Denver District Attorney's Office then dropped all charges against Plaintiffs.  By that time, Plaintiffs had spent an extended time in the Denver County Jail—approximately 45 days for Mr. Hutchinson and 110 days for Mr. Puller.

Plaintiffs sued Defendants for false arrest and malicious prosecution under § 1983 and Colorado law.  Defendants moved to dismiss both the initial complaint and the first amended complaint.  Both parties attached materials, including the HALO video, to their filings.  After Defendants moved to dismiss the first amended complaint, the court directed Plaintiffs either to move to amend their complaint or to move the court to convert the second motion to dismiss into a motion for summary judgment.  Plaintiffs opted to file a second amended complaint.

Based on the facts recited above, Plaintiffs' second amended complaint alleged "Defendant[] intentionally fabricated the probable cause report through the use of false statements and misrepresentations to make it look like probable cause existed to arrest Plaintiffs for attempted murder despite having no evidence to suggest such charges were appropriate." Aplts. App. at 20. Plaintiffs believed "Defendants made assumptions about Plaintiffs as gang members based on their skin color, and this malicious assumption served, in part, as motivation to intentionally ignore all the evidence indicating the Plaintiffs had not perpetrated a shooting." *Id.* at 20-21. They asserted Officer Greco failed to report the favorable gunshot reports to the Denver District Attorney's Office, and "both Defendants were trying to cover up their illegal behavior by withholding evidence so that a plea would be agreed to, and nobody would care if two young black men improperly labeled as gang members went to prison." *Id.* at 21-22. They also alleged:

> Rather than conduct any reasonable investigation into the incident, both Plaintiffs were presumed to be guilty by the Denver Police and were summarily arrested and charged with several grave felonies. Defendant Officers made these decisions to arrest and draft affidavits supporting their warrantless arrest despite having overwhelming and undeniable evidence of the young men's innocence.

*Id.* at 22. "As a result of the officer's false statements and omission of material exculpatory facts, both very young men spent a significant amount of time wrongfully incarcerated." *Id.*

Defendants moved to dismiss the second amended complaint. Among other arguments, they asserted the HALO video established probable cause to think

5

Plaintiffs had fired a weapon at people on the sidewalk. They also invoked the defense of qualified immunity, asserting Plaintiffs failed to state a claim for a constitutional violation and could not show Defendants violated any clearly established right. *See Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) ("A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." (internal quotation marks omitted)).

Plaintiffs opposed the motion. They argued they adequately pleaded Defendants lacked probable cause to support their arrest and continued prosecution. To show the law was clearly established, they cited *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), in which this court affirmed the denial of qualified immunity in a § 1983 suit alleging unlawful search and seizure. *See id.* at 1254.

In *Baptiste*, the plaintiff had been accused of shoplifting by store employees, who called the police. *See id.* The police officers detained the plaintiff and conducted searches of her person, as well as her bag and purse. *See id.* at 1255. The plaintiff produced receipts and the searches revealed no stolen merchandise. *See id.* Before conducting the searches, the officers viewed a security videotape of the plaintiff's activities in the store, which did not document any illegal activity. *See id.* at 1254–55. This court stated:

> The question, therefore, is whether "reasonable grounds" existed to believe the shoplifting allegations made by store security guards in light of the conduct recorded on the videotape; [plaintiff's] explanation; her

6

> production of receipts for two rings; and the search of her bag, purse, and pockets, which revealed no stolen merchandise. This court holds that this information, known to [the officer], did not provide reasonable grounds to believe the security guards' allegations of theft and did not provide probable cause to arrest [the plaintiff].
>
> The videotape is insufficient as a matter of law to establish probable cause. Contrary to the officers' assertions that the videotape is ambiguous, it does not suggest theft nor does it contradict [the plaintiff's] explanation of the events. . . . Nothing on the videotape reasonably suggests that [the plaintiff] was shoplifting . . . .

*Id.* at 1257. Surveying the state of the law, this court then stated, "police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." *Id.* at 1259. Plaintiffs asserted "[t]he ruling in *Baptiste*, and its precedent, clearly establishes [Defendants] did not have sufficiently reasonable trustworthy information to constitute probable cause." Aplts. App. at 55.

The district court granted Defendants' motion. It focused on qualified immunity, particularly whether Plaintiffs showed Defendants violated a clearly established right. It discussed *Baptiste*, but it concluded "[t]he cited general authority establishing that officers must conduct an independent evaluation of easily accessible evidence in determining probable cause does not contain 'materially similar facts' to 'make the precedent sufficiently particularized' that it 'applies with obvious clarity' to Defendants' alleged conduct." Aplts. App. at 69-70 (quoting *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022)). The district court therefore dismissed Plaintiffs' claims.

7

**II**

We review a Rule 12(b)(6) dismissal de novo. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130 (10th Cir. 2024). "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *Id.* at 1130-31 (brackets and internal quotation marks omitted).[4] "[T]o withstand a motion to dismiss, a plaintiff must plead sufficient factual allegations to state a claim to relief that is plausible on its face." *Id.* at 1131 (internal quotation marks omitted).

Defendants invoked, and the district court relied on, qualified immunity. "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Doe*, 912 F.3d at 1289 (brackets and internal quotation marks omitted). As stated, "[a] motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." *Id.* (internal quotation marks omitted). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment . . . because at [this] stage, it is the defendant's conduct *as alleged in the complaint* that is

---

[4] Plaintiffs argue the district court failed to draw all reasonable inferences in their favor. We are not convinced, however, that the district court's observations about deficiencies in the second amended complaint require reversal.

8

scrutinized for objective legal reasonableness." *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (internal quotation marks omitted).

## A

Plaintiffs argue they adequately pleaded constitutional violations, and therefore the district court should have considered the first prong of qualified immunity—whether a constitutional violation occurred. In their view, the first prong would have been dispositive of their claims. They state, "the facts in their complaint are so damning to the Appellees that the District Court, nor any court, should ever have entertained a full qualified immunity defense claim," Aplts. Opening Br. at 13, and "[c]onducting an analysis under the constitutional violation prong would have forced the District Court to deny qualified immunity," *id.* at 16.

It is well-established, however, that the district court is free to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Crucially, even if the district court had ruled in their favor on the first prong, Plaintiffs still had to satisfy the second prong to overcome Defendants' motion to dismiss. *See A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) ("[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense."). In short, the district court did not abuse its discretion in considering whether Plaintiffs showed the law was clearly established before considering whether Plaintiffs' allegations showed Defendants violated their constitutional rights.

**B**

Like the district court, we need not consider whether Plaintiffs established the first prong of the qualified-immunity test, because we consider the second prong—whether the right was clearly established at the time—to be dispositive of this case.

Plaintiffs argue the district court erred in concluding they failed to show the law was clearly established. "A constitutional right is clearly established if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Doe*, 912 F.3d at 1289 (internal quotation marks omitted). "Generally, existing precedent must have placed the statutory or constitutional question beyond debate for a right to be established." *Id.* (internal quotation marks omitted). "The plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted).

Plaintiffs contend the district court erred in concluding their precedent was not sufficiently particularized to overcome qualified immunity in the circumstances of this case. They assert, "qualified immunity in the probable cause context does not necessarily turn on specific facts, rather, it is about the legal issue. Specific facts *can/may* help, but they are not required." Aplts. Opening Br. at 23.

It is true that the Supreme Court has "not require[d] a case directly on point," but nevertheless, courts cannot "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation

10

marks omitted). So, for example, "[s]imply to say the law has long recognized one's right to be free from arrest absent probable cause casts way too high a level of generality over our inquiry." *Culver v. Armstrong*, 832 F.3d 1213, 1218 (10th Cir. 2016). The district court appropriately focused on whether courts had clearly established the law in circumstances closer to this case.

In that vein, Plaintiffs continue, "when a § 1983 claim is brought for a wrongful arrest the issue is simple and narrow: was there probable cause to support the arrest?" Aplts. Opening Br. at 24. They contend they adequately pleaded Defendants lacked probable cause for multiple counts of attempted murder. The lynchpin of their argument is their suggestion the HALO video "clearly showed that [Plaintiffs] were victims of a shooting – not the perpetrators." *Id.* at 25. Pointing to *Baptiste*, they state it is clearly established that "the viewing of a video tape which would never allow for the establishment of probable cause for an arrest, *is as a matter of law*, enough to show that no reasonable police officer could ever have probable cause for an arrest." *Id.* at 26.

In the qualified-immunity context, however, it is not enough to allege a lack of probable cause; there must not exist even "arguable probable cause"—that is, the arresting officer's "belief that he possessed probable cause [must be] not only mistaken, it [must be] objectively unreasonable." *A.M.*, 830 F.3d at 1147. An officer does not have arguable probable cause to arrest if "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (internal quotation marks

omitted). Plaintiffs have failed to satisfy this standard because the HALO video is not nearly as clear or exonerating as Plaintiffs make it out to be.

The HALO video shows Mr. Puller's car making the turn on 19th Street and pulling over to the curb, toward a group of people on the sidewalk. Someone leans out the window of the passenger seat, and a person on the sidewalk lifts his arm toward the car. Others move away from the car, ducking, and at least two people stumble or fall to the ground. The car accelerates quickly and turns into the alley. A few people stop to help a person on the ground to his feet, and the people on the sidewalk leave the scene.

In Plaintiffs' view, the HALO video confirms they were victims—not perpetrators—of a shooting. But a reasonable viewer could perceive the HALO video as showing a person or persons in Plaintiffs' car committing a drive-by shooting, targeting the people on the sidewalk. This distinguishes this case from *Baptiste*, in which the court held the video available to the officers was not ambiguous, and in which "[n]othing" suggested that the plaintiff had committed a crime. *Baptiste*, 147 F.3d at 1257.

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"; "[i]t is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks omitted). Plaintiffs have not identified authority clearly establishing that Defendants lacked arguable probable cause when they relied on an ambiguous video potentially inculpating Plaintiffs in a crime, even though Defendants' interpretation was

12

mistaken and the video ultimately did not support prosecution. Accordingly, the district court did not err in determining Defendants were entitled to qualified immunity. *See Wesby*, 583 U.S. at 65 ("Tellingly, neither the [court of appeals] panel majority nor the [plaintiffs] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances." (internal quotation marks omitted)).[5]

### III

We affirm the district court's judgment.

Entered for the Court

Veronica S. Rossman
Circuit Judge

---

[5] *Wesby* went on to observe that "it should go without saying that this is not an obvious case where a body of relevant case law is not needed." 583 U.S. at 65 (internal quotation marks omitted). To the extent Plaintiffs attempt to invoke this obvious-violation principle on appeal, they did not preserve such an argument in the district court. *See* Aplts. App. at 69 n.6 (observing Plaintiffs failed to "argue that the unconstitutional nature of Defendants['] alleged conduct was so apparent that they had fair warning despite a lack of analogous authority"). Nor do they argue for plain-error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").